275 N.J. Super. 393 (1994)
646 A.2d 473
STANLEY WEISS, PLAINTIFF-APPELLANT-CROSS-RESPONDENT, AND JEROME E. SHARFMAN AND THOMAS J. LENNON, PLAINTIFFS-CROSS-RESPONDENTS,
v.
CARPENTER, BENNETT & MORRISSEY, EDWARD F. RYAN AND MICHAEL S. WATERS, DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS.
CARPENTER, BENNETT & MORRISSEY, EDWARD F. RYAN AND MICHAEL S. WATERS, PLAINTIFFS-RESPONDENTS-CROSS-APPELLANTS,
v.
STANLEY WEISS, DEFENDANT-APPELLANT-CROSS-RESPONDENT, AND JEROME E. SHARFMAN AND THOMAS J. LENNON, DEFENDANTS-CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1994.
Decided July 18, 1994.
*395 Before Judges PRESSLER, DREIER and BROCHIN.
Appellant Stanley Weiss argued the cause pro se.
*396 Cross-respondent Jerome E. Sharfman argued the cause for cross-respondents Mr. Sharfman and Thomas J. Lennon (Jerome E. Sharfman, attorney; Mr. Sharfman, on the brief).
Jerome Graham argued the cause for respondents-cross-appellants Carpenter, Bennett & Morrissey, Edward F. Ryan and Michael S. Waters (Ribis, Graham & Curtin, attorneys; Mr. Graham, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
Stanley Weiss, Jerome E. Sharfman, and Thomas J. Lennon are former partners of Carpenter, Bennett & Morrissey, a New Jersey law firm, who left that firm to form a competing law firm. All of them are younger than sixty-five years of age. Carpenter, Bennett & Morrissey offered them payouts calculated in accordance with paragraphs 9(b) and 10(a) of the firm's partnership agreement which provide, in substance, that part of the payout to which a partner would become entitled if he or she withdraws from the firm because of death, disability, or judicial appointment is forfeited by any partner who withdraws for any other reason before he or she becomes sixty-five years of age. The former partners contended that the forfeiture provisions of their agreement were either inapplicable to their situation or, if applicable, unenforceable because they were contrary to the New Jersey Rules of Professional Conduct ("RPC"), specifically, RPC 5.6 as interpreted by Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 607 A.2d 142 (1992), and that they were therefore entitled to larger amounts than they had been offered by their former law firm.
Upon Carpenter, Bennett & Morrissey's rejection of their demands, Weiss, Sharfman, and Lennon sued to recover what they claimed were their proper shares of the firm's capital and earnings, and damages for their former partners' alleged breach of *397 fiduciary relations.[1] On the motion of the law firm, the suit was stayed and, over the departing partners' objections, all of their claims except their claims based on defamation were referred to arbitration. The parties then agreed upon the selection of a sole arbitrator. At a preliminary conference with the arbitrator, they agreed that:
1. All testimony shall be under oath.
2. The Arbitrator shall issue a written opinion setting forth his factual findings and legal conclusions.
3. The Arbitrator will apply the law of New Jersey to all issues in the case.
....
Liability issues were bifurcated from damages, and evidence on liability was presented to the arbitrator during seven days of hearings.
Following the hearings, the arbitrator rendered a comprehensive written opinion detailing his findings and conclusions. He determined that paragraph 10(a) of the Carpenter, Bennett & Morrissey partnership agreement controlled the payouts to Weiss, Sharfman, and Lennon because their departures were the "withdrawal[s]" of partners within the meaning of that paragraph, but that paragraph 10(a) violated RPC 5.6 insofar as it caused the withdrawing partners to forfeit their equity interest in the firm; that Weiss was estopped from contesting the validity of the forfeiture, but that Sharfman and Lennon were entitled to receive their equity interests in the law firm, calculated according to the method of paragraph 9(b) of the agreement; and that each of the three former partners was entitled to receive his share of the 1991 net income of the firm, but not the additional amount of up to *398 twenty-five percent of his 1991 income to which he would have been entitled if he had withdrawn because of death, disability, judicial appointment, or retirement at age sixty-five. In response to an application for reconsideration, the arbitrator issued a further explanatory opinion which did not alter his previously stated conclusions. The parties then stipulated to the amounts to be awarded in accordance with the arbitrator's determinations of the liability issues, and the arbitrator issued his award.
Carpenter, Bennett & Morrissey instituted a summary action pursuant to N.J.S.A. 2A:24-7 to confirm the award or, alternatively, to vacate the award to Sharfman and Lennon if they or Weiss should seek to vacate the award to Weiss. Weiss, Sharfman, and Lennon counterclaimed to vacate portions of the award and to confirm the rest. After arguments and submission of the arbitration record, the trial court confirmed the arbitrator's award in its entirety and, in order to facilitate any appeal, consolidated the initial action, which had been stayed pending arbitration, with the summary action in which the judgment had been entered confirming the award.
Sharfman and Lennon have not appealed or cross-appealed. They are prepared to accept the awards as confirmed. Weiss has appealed and Carpenter, Bennett & Morrissey has cross-appealed. Weiss argues that his claims for breach of fiduciary obligations are not encompassed within the arbitration clause of the partnership agreement, that the issue of the validity of the forfeiture provision of the agreement is not arbitrable as a matter of public policy, and, alternatively, that the trial court's confirmation of the arbitrator's rulings holding him to be a "withdrawing partner" subject to the forfeiture clause, but estopped from contesting it, are legally erroneous and without factual support. Carpenter, Bennett & Morrissey argues that the trial court erred in confirming the arbitrator's determination that the forfeiture clause of its partnership agreement is unenforceable, but it presses that argument only if this court or the Supreme Court should sustain Weiss's *399 claim to recover as if he had withdrawn because of death, disability, retirement at age sixty-five, or judicial appointment.
The arbitration provisions of the partnership agreement state:
(a) The undersigned partners, recognizing the mutuality of confidence among themselves as members of the firm and the detriment to the firm and its clients should any differences among the partners result in litigation, hereby agree that any difference or dispute of any kind arising hereunder shall be determined and decided by the senior partners, whose determination and decision, by majority vote, shall be final and binding upon the partners and their respective heirs, executors, administrators, successors and assigns.
(b) In the event the provisions of subparagraph (a) hereof shall be determined for any reason to be void or unenforceable as applied to any such difference or dispute, such difference or dispute shall be submitted for determination to such arbitrator, who shall be a practicing lawyer, as is designated, by and pursuant to the designation rules of the American Arbitration Association....
As the trial court properly held, the senior partners of Carpenter, Bennett & Morrissey would not have been appropriate decision makers for the resolution of this dispute. As applicable to the present case, the arbitration clause mandates the arbitration of "any differences among the partners ... of any kind arising" under the partnership agreement. This verbal formulation is certainly sufficiently comprehensive to encompass the claims of Weiss, Sharfman, and Lennon that, for any or all of the various reasons they have argued, they were entitled to receive larger amounts of money when they left Carpenter, Bennett & Morrissey than the firm was willing to pay them. Cf. Cohen v. Quiat, 749 P.2d 453, 454 (Colo.Ct.App. 1987); Vann v. Kreindler, Relkin & Goldberg, 78 A.D. 255, 434 N.Y.S.2d 365, 367 (1980), aff'd, 54 N.Y.2d 936, 445 N.Y.S.2d 139, 429 N.E.2d 817 (1981).
Since the parties agreed before submission of their dispute to the arbitrator that he should "apply the law of New Jersey to all issues in the case," resolution of the controversy between Carpenter, Bennett & Morrissey and its former partners necessarily required him to decide whether paragraph 10(a) of the partnership agreement violated RPC 5.6(a). The arbitration clause also required the arbitrator to be a practicing lawyer. The Rules of *400 Professional Conduct are written to be understood and applied by practicing lawyers. A practicing lawyer sitting as an arbitrator pursuant to the Carpenter, Bennett & Morrissey partnership agreement is obligated and competent to determine the meaning and validity of its forfeiture provisions in light of the Rules of Professional Conduct as interpreted by our courts. Cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444, 456 (1985) (By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.)
Faherty v. Faherty, 97 N.J. 99, 477 A.2d 1257 (1984), is analogous to the present case because it considered the arbitrability of issues affected by public policy. The Court reiterated that, "In this state, as in most American jurisdictions, arbitration is a favored remedy," id. at 105, 477 A.2d 1257, and it approved the arbitrability of alimony and child support. Faherty lends support to the trial court's submission of the entire present controversy to arbitration, including the validity and effect of paragraph 10(a) of the partnership agreement, and we reject Weiss's challenge to that ruling. See Hackett v. Milbank, Tweed, Hadley & McCloy, 80 N.Y.2d 870, 587 N.Y.S.2d 598, 600 N.E.2d 229, 230 (1992) (holding that an otherwise arbitrable controversy over a withdrawing law partner's right to receive supplemental payments from his law firm should be decided by an arbitrator in the first instance despite the withdrawing partner's claim that denying him benefits would be contrary to public policy); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26, 38 (1991) (holding that a dispute under the Age Discrimination in Employment Act is arbitrable and citing other cases upholding the arbitrability of other claims involving issues of public policy); Williams v. Katten, Muchin & Zavis, 837 F. Supp. 1430 (N.D.Ill. 1993) (upholding the arbitrability under a law firm's partnership agreement of a noncapital partner's Title VII and Civil Rights Act claims that the firm had discriminated against her on grounds of race and sex).
*401 The other issues presented by this appeal require us to consider the appropriate standard for judicial review of an arbitral award in the light of Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc. 135 N.J. 349, 640 A.2d 788 (1994). Quoting from the Chief Justice's concurring opinion in Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 548-49, 610 A.2d 364 (1993), the Court in Tretina adopted the following standard:
Basically, arbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators. [They] can be corrected or modified only for very specifically defined mistakes as set forth in [N.J.S.A. 2A:24-9].
[Tretina, supra, 135 N.J. at 358, 640 A.2d 788.]
In Perini, the Chief Justice expressly refrained from deciding whether there should be a public-policy exception to this standard of judicial noninterference with arbitral awards. However, he noted that a different standard had been applied in Faherty, supra, 97 N.J. 99, 477 A.2d 1257, where "special policy reasons ... may have led this Court to note that heightened judicial scrutiny may be required in reviewing arbitration awards affecting child support and custody." Perini, supra, 129 N.J. at 524, 610 A.2d 364 (Wilentz, C.J., concurring). But in Tretina, where the Chief Justice joined in the majority's per curiam opinion, the Court explicitly embraced Faherty's public policy exception:
Finally ... we add our recognition that in rare circumstances a court may vacate an arbitration award for public-policy reasons. For example, in Faherty v. Faherty, 97 N.J. 99 [477 A.2d 1257] (1984), we held that "whenever the validity of an arbitration award affecting child support is questioned on the grounds that it does not provide adequate protection for the child, the trial court should conduct a special review of the award." Id. at 109, 477 A.2d 1257. That heightened judicial scrutiny is required because of the courts' traditional role as parens patriae. Id. at 111, 477 A.2d 1257....
Additionally, in Faherty, supra, we concluded that a combination of public-policy reasons and a mistake of law warranted judicial vacation of the arbitration award. We vacated a portion of the arbitration award because it granted one spouse alimony after she had remarried, and because ... the parties in Faherty had agreed that the arbitrator would decide legal issues in accordance with New Jersey law. 97 N.J. at 112, 477 A.2d 1257. Because the alimony allowance in Faherty represented a fundamental error of New Jersey law, the court properly vacated that portion of the award.
[Tretina, supra, 135 N.J. at 364-65, 640 A.2d 788.]
*402 Both of the circumstances which, according to Tretina, justified close judicial scrutiny of the arbitral award in Faherty are present in the instant case. First of all, as we have previously emphasized, the parties to this case expressly agreed that "[t]he Arbitrator will apply the law of New Jersey to all issues in the case."[2] Secondly, as the decisions of our Supreme Court demonstrate, the interpretation and enforcement of RPC 5.6(a), which prohibits a lawyer from "participat[ing] in offering or making ... a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship," involve significant public-policy considerations. The Court emphasized those considerations in Karlin v. Weinberg, 77 N.J. 408, 419-21, 390 A.2d 1161 (1978), where it distinguished physicians' restrictive covenants from similar covenants among attorneys. The latter are illegal per se. The Court declared that restrictive agreements which affect the right of lawyers to practice their profession are subject to the "exercise by the judicial branch of its unique constitutional responsibility for regulating the conduct of attorneys," id. at 419, 390 A.2d 1161, and that, "in exercising its supervisory role over attorneys, [the Court] has determined that restrictive covenants among lawyers are detrimental to the public interest." Id. at 420, 390 A.2d 1161. To the same effect, see Dwyer v. Jung, 133 N.J. Super. 343, 346-47, 336 A.2d 498 (Ch. Div.), aff'd o.b., 137 N.J. Super. 135, 348 A.2d 208 (App.Div. 1975). These principles were reiterated in Jacob which holds that "financial disincentive provisions, like direct prohibitions, are unenforceable as against public policy." Jacob, supra, 128 N.J. at 23, 607 A.2d 142.
If we were barred by Tretina's nonintervention rule from scrutinizing arbitral awards which decide alleged breaches of RPC 5.6(a), the holdings of Jacob and our decision in Katchen v. Wolff & Samson, 258 N.J. Super. 474, 610 A.2d 415 (App.Div.), certif. *403 denied, 130 N.J. 599, 617 A.2d 1222 (1992), which followed and expanded Jacob, could readily be circumvented and the courts would be prevented from performing their "supervisory role" as representatives and protectors of the public interest. These considerations persuade us that the forfeiture issue in the present case falls within the small group of issues which the public-policy exception, exemplified by Faherty and recognized in Tretina, excludes from the nonintervention rule.
However, the standard for review of each ruling of the arbitrator which has been disputed on appeal must be considered separately. Every one of his rulings is not so closely related to the issue of the enforceability of the forfeiture provisions of the partnership agreement that it falls within the public-policy exception to the usual standard of review of arbitral awards.
We consider, first, the standard for our review of the arbitrator's determination that Weiss's departure from the firm was the "termination and withdrawal of any partner" within the meaning of paragraph 10(a) of the partnership agreement. Customarily, Carpenter, Bennett, and Morrissey partnership agreements were revised every two or three years. Weiss, Sharfman, and Lennon left the firm on June 30, 1991. The last previous revision of the partnership agreement was effective as of January 1, 1988, for a three-year term which was scheduled to expire December 31, 1990. The subsequent, revised version of the partnership agreement was adopted on or about May 22, 1991, and was given retroactive effect to January 1, 1991. Weiss's disagreement with the majority of his partners at Carpenter, Bennett & Morrissey was a major reason for his leaving the firm, and the other two departing partners, who had worked almost exclusively on legal matters in which he was involved, left because he did. Weiss, Sharfman, and Lennon did not sign the new revision of the partnership agreement. On the basis of these facts, Weiss contends that he is not bound by any of the provisions of the 1988 partnership agreement, including its forfeiture provisions. The arbitrator disagreed, concluding that "the 1988 agreement by its *404 terms continued to be effective until it was succeeded by a new agreement." This determination is not closely related to the interpretation and enforceability of the forfeiture provisions of the partnership agreement. Accordingly, it does not fall within any exception to the Tretina rule of judicial noninterference and it is therefore unassailable.
Carpenter, Bennett & Morrissey disputes the arbitrator's ruling that "[i]nsofar as Paragraph 10 of the Carpenter Bennett agreement eliminates the departing partner's equity interest and discourages a partner from leaving and becoming competitive with the firm, it is violative of RPC 5.6." That ruling, of course, is within the public-policy exception to the usual noninterference rule for arbitral awards. It is therefore subject to our strict scrutiny. However, we agree with the arbitrator's conclusion.
The arbitrator held:
The failure to pay anything for the partner's equity interest acts as a disincentive to leave the firm and practice law in competition with the Carpenter Bennett firm, incidentally also affecting his financial ability to practice law. As Jacob states, the plain meaning of RPC "indicates that any provision, whether direct or indirect, that operates so as to restrict a lawyer's post-termination practice will contravene the ethical rule." [Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 18, 607 A.2d 142 (1992) (emphasis added).] Jacob says "financial disincentive provisions by selectively withholding compensation strongly discourage `competitive' activities." [Jacob, supra, 128 N.J. at 22, 607 A.2d 142.] I am constrained to follow the statements and rationale of Jacob.

The arbitrator also relied on cases from other jurisdictions. Howard v. Babcock, 7 Cal. Rptr.2d 687, 690 (Ct.App. 1992) (noncompetition covenant in partnership agreement held contrary to public policy and invalid because it impermissibly "restricts the right of a member to practice law"), aff'd in part and rev'd in part, 6 Cal. 4th 409, 25 Cal. Rptr.2d 80, 863 P.2d 150 (1993); Denburg v. Parker, Chapin, Flattau & Klimpl, 184 A.D.2d 343, 586 N.Y.S.2d 107, 109 (1992) (partnership agreement provision whose principal function was to prevent competition deemed contrary to public policy and unenforceable), modified and aff'd, 82 N.Y.2d 375, 604 N.Y.S.2d 900, 624 N.E.2d 995 (1993); Cohen v. Lord, Day & Lord, 75 N.Y.2d 95, 551 N.Y.S.2d 157, 550 N.E.2d 410, 411 (1989) *405 (partnership agreement that conditioned payment of earned income on whether the departing partner continued to practice law in any state in which the firm had an office held unenforceable because it "would functionally and realistically discourage a withdrawing partner from serving clients who might wish to continue to be represented by the lawyer"); Gray v. Martin, 63 Or. App. 173, 663 P.2d 1285, 1290 (Or.Ct.) (partnership agreement permitting withdrawing partner to share firm profits for two years unless he resumed active practice of law in the same geographical area held unenforceable as contrary to the Rules of Professional Responsibility and public policy), review denied, 295 Or. 541, 668 P.2d 384 (1983); Hagen v. O'Connell, Goyak & Ball, P.C., 68 Or. App. 700, 683 P.2d 563, 564-65 (1984) (buy-sell agreement that forced attorney to forfeit forty percent of stock if he or she did not sign agreement not to compete in the practice of law violated the Rules of Professional Responsibility); Spiegel v. Thomas, Mann & Smith, P.C., 811 S.W.2d 528, 529-31 (Tenn. 1991) (partnership agreement providing for payment of deferred compensation unless the withdrawing person continued to practice law held unenforceable because it "is unethical for an attorney employing another attorney to include as part of the employment contract a restrictive covenant prohibiting the employee from practicing law after termination of employment"); see also American Bar Association, Informal Op. 1072 (1968) ("[T]he attorney must remain free to practice when and where he will and to be available to prospective clients who might desire to engage his services.").
In an addendum to his opinion, the arbitrator also referred to Katchen v. Wolff & Samson, supra, 258 N.J. Super. 474, 610 A.2d 415, which was published after he had substantially completed his opinion. The agreement in Katchen did not explicitly penalize a member of the firm who withdrew to compete with the firm's practice; under the Katchen agreement a member withdrawing from the firm forfeited his interest whatever his reason for withdrawal. Our holding that the Katchen agreement was void strongly supports the conclusion that paragraph 10(a) of the *406 Carpenter, Bennett & Morrissey partnership agreement is unenforceable because it violates RPC 5.6.
Weiss disputes the arbitrator's decision that he, unlike Lennon and Sharfman, is barred by estoppel from benefitting from the effect of RPC 5.6. That decision of the arbitrator has serious public-policy implications. Its effect has been the enforcement against Weiss of provisions of the Carpenter, Bennett & Morrissey partnership agreement which the arbitrator, and we on appeal, have held are violative of RPC 5.6(a). We accept the arbitrator's findings of fact material to this issue, but since the parties have agreed that the arbitrator "will apply the law of New Jersey to all issues in this case," we conclude that that agreement and Tretina's public-policy exception require us to scrutinize his legal determinations of this issue to ascertain whether it conforms to New Jersey law.
In the arbitrator's original opinion and in his supplemental opinion responding to Weiss's petition for reconsideration, he detailed the following factual findings on which he based his estoppel conclusion. Weiss had been a senior partner of Carpenter, Bennett & Morrissey since 1970 and, since 1982, a member of its executive committee, which governed the firm and prepared revisions of its partnership agreement for submission to the partners every three years. While Weiss was a senior partner, five other partners withdrew from the firm. Although they were junior partners, they had equity interests in the capital of the firm which they forfeited when they left. Weiss did not protest the forfeitures and he, together with the other partners who remained, benefitted from the firm's practice of not paying departing partners their capital accounts. On one occasion, when he appeared in court on behalf of the firm to quash a subpoena by which a partner's wife who was engaged in divorce litigation sought to obtain a copy of the partnership agreement, he argued to the court that the partner's
interest is not a vested interest in anything there. What the agreement shows is in the event he leaves the firm tomorrow, either on his preference or the preference *407 of the senior partners of the firm, all he would have is what he earned for working this year.
For many years, Weiss exhibited a concern about the methodology used to compute the economic value contributed to the firm by the partners and associates. He advocated modifying the firm's partnership agreements by increasing the amounts available to partners who retired or died, and, just before he left the firm, he expended considerable time developing and advocating a proposed modification of the partnership agreement which was rejected by a majority of partners.
In Jacob, supra, 128 N.J. at 35, 607 A.2d 142, the Court rejected the law firm's contention that equitable principles should bar the departing partners from receiving the compensation that had been withheld from them. It was true, the Court agreed, that they had signed the agreement which provided for a forfeiture if a member of the firm left to open a competitive practice and that they would receive a "windfall" if their agreement was not enforced. But, the Court pointed out, it had held a provision of the agreement unenforceable in order "to preserve client choice." Therefore, it declared,
The issue is thus not simply which party is more or less innocent, but which outcome best serves the public interest....
In the present case, ... [i]f we neither allow plaintiffs to challenge the covenant nor provide them with the benefits of the agreement that would belong to them in the absence of the illegal provision, no one will have the standing or motivation to challenge the illegal provisions. Law firms will then be able to include restrictive covenants in employment agreements without fear of enforcement, rendering RPC 5.6 impotent.
[Ibid.]
If the Jacob opinion had stopped there, it would have clearly precluded the arbitrator's estoppel ruling. However, the opinion continues as follows:
We note that equitable principles might bar a plaintiff's recovery if the plaintiff had been a senior partner instrumental in drafting a restrictive agreement, imposing it on his or her fellow partners or employees, and then sought to have the provision declared unenforceable when he or she decided to leave.
[Id. at 36, 607 A.2d 142.]
*408 The critical question is whether the material facts found by the arbitrator in the present case are of the sort contemplated by the paragraph last quoted from Jacob.
We hold that they are not. The undisputed facts show that the partnership agreement in effect when Weiss became a senior partner contained substantially the same forfeiture provisions as those of the agreement at issue in this case. In appearing in court to argue the validity of the forfeiture provision and in profiting from his firm's withholding withdrawing partners' capital, Weiss was defending and benefitting from the agreement whose enforceability he now contests. However, in doing so, his conduct was not materially different from that of the departing partners in Jacob or, for that matter, of Sharfman and Lennon, or of almost any other lawyer who repudiates an illegal covenant against competition after having agreed to it and benefitted from it while its maintenance was to his advantage. As the Supreme Court explained at length in Jacob, despite the apparent inequity of the result, "the public interest is served by invalidating the restrictive covenant." Id. at 35, 607 A.2d 142. In the case of Carpenter, Bennett & Morrissey, for example, if Weiss's capital is forfeited, the illegal provisions of the partnership agreement may continue to exert an in terrorem influence on other partners who would prefer to practice in competition with the firm. A ruling that could have that effect is violative of RPC 5.6(a), whose "plain meaning indicates that any provision, whether direct or indirect, that operates so as to restrict a lawyer's post-termination practice will contravene the ethical rule." Jacob, supra, 128 N.J. at 18, 607 A.2d 142. Whatever the state of facts which Jacob contemplates "might bar a plaintiff's recovery," id. at 36, 607 A.2d 142, we are of the view that Weiss's conduct revealed by the record in the present case is not so heinous that it requires the sacrifice of the public-policy objectives which Jacob enunciates and vindicates.
Our decision requires that Carpenter, Bennett & Morrissey pay Weiss the amount of his capital account, calculated in the same way as Sharfman's and Lennon's. Tretina admonishes us that in *409 all but exceptional cases, a court reviewing an arbitrator's award lacks the authority to remand the matter to the arbitrator. Tretina, supra, 135 N.J. 349, 360-65, 640 A.2d 788 (1994). We need not decide whether we have that authority in the present case. As we noted earlier, Sharfman and Lennon did not appeal. Weiss has argued only for the right to receive the amount in his capital account calculated as if he had withdrawn because of death, disability, retirement at age sixty-five, or judicial appointment. We assume that the parties will stipulate that amount as they did the amounts payable on the same basis to Sharfman and Lennon after the arbitrator had rendered his decision on the liability issues. If they are unwilling to stipulate, the trial court, to which we remand this matter, can readily determine the correct amount with whatever limited testimony that may be required.
During the pendency of this appeal, Weiss applied to our court for a temporary remand to the trial court to enable him to move within the time period fixed by R. 4:50-2 to vacate its judgment on the ground of newly discovered evidence. We denied his application, but ordered that the issue raised by his motion was "preserved for plaintiff [Weiss] until the conclusion of this appeal." In accordance with that order, he may present his motion to the trial court on remand.
The judgment of the Chancery Division confirming the arbitrator's award is vacated and the case is remanded to that court for further proceedings consistent with this opinion.
NOTES
[1] Weiss, Sharfman, and Lennon named two of their former partners as defendants, as well as the firm, and claimed that some of their former partners had injured them by tortious self-dealing. Weiss also claimed defamation. Carpenter, Bennett & Morrissey counterclaimed for various alleged tortious breaches of fiduciary duty. On appeal, none of the parties have argued in support of any of their claims except those dealing with the amount of money the departing partners were entitled to because of their interests in the partnership. Consequently, those are the only claims that we consider in this opinion.
[2] In Perini, the Chief Justice's concurring opinion recognized that parties to an arbitration may, if they wish, expressly require the arbitrator to decide according to New Jersey law. Perini, supra, 129 N.J. at 548-49, 610 A.2d 364.