SUSAN FAHERTY, PLAINTIFF-RESPONDENT, v. J. ROGER FAHERTY, DEFENDANT-APPELLANT.

Argued March 6, 1984—Decided July 19, 1984.

*Patrick J. Monaghan, Jr.,* argued the cause for appellant.

*Theodore Sager Meth* argued the cause for respondent (*Meth, Nagel, Rice & Bausch,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

The question posed in this appeal is whether an arbitration provision in a separation agreement, entered into by the parties prior to their divorce and incorporated in their divorce judgment, is enforceable. The Chancery Division and the Appellate Division enforced the arbitration provision. We granted certification, 94 *N.J.* 616 (1983), and now modify and affirm, as modified, the Appellate Division's judgment.

## I

Susan Faherty (Susan) and J. Roger Faherty (Roger) were divorced in 1977 after seventeen years of marriage. At that time, they had four dependent children. Prior to their divorce, the parties, both of whom were represented by counsel, negotiated and executed a Property Settlement Agreement (Agreement). The trial court incorporated the Agreement in the final judgment of divorce, which expressly recited that the court had made no "findings as to the reasonableness thereof."

The Agreement is detailed and governs equitable distribution, spousal support, child custody, and child support. Paragraph 25 of the Agreement provides that any financial dispute arising out of the Agreement must be arbitrated as a condition precedent to court action; the arbitration must be conducted under the rules of the American Arbitration Association (AAA); and the arbitrator's decision is binding on the parties. Paragraph 20 permits modification of payments due to changed circumstances but, in the event of a dispute over the necessity for such modification, requires arbitration as a condition precedent to judicial relief.

The Agreement also contains several paragraphs dealing with the equitable distribution of the parties' assets. Under the terms of the Agreement, Roger transferred the marital home in Summit, New Jersey to Susan, who also retained all the tangible personal property in the home and a Jeep. Paragraph 7 required Roger, over a ten-year period, to pay Susan ten promissory notes totalling $165,000 as "an adjustment of accounts as part of the division in lieu of statutory equitable distribution of marital assets." [1]  In the event of Roger's death,

---

[1]Paragraph 7 provides in part:

> The parties shall make an adjustment of accounts as part of the division in lieu of statutory equitable distribution of marital assets by the payment by the husband to the wife of $165,000., payable as follows: by a series of ten non-interest bearing notes, due annually commencing on October 1, 1978, with privileges of prepaying without credit or penalty, which notes shall be

the notes were to be treated as a debt of his estate. As security for the payment of the notes, Roger was required to furnish stock to be held in an escrow account and to secure a $100,000 term life insurance policy.

Paragraph 29 provides for adjustment of support under certain circumstances. Roger was a successful investment banker employed by his closely-held family corporation. The parties recognized that Roger's ability to meet his spousal-support obligations under the Agreement was contingent on his company's earnings. To avoid the possibly unjust consequences of requiring Roger to pay the full support required in the Agreement in years when his company did not make a profit, the parties in paragraph 29 provided:

29. (a) The parties to this Agreement recognize that the husband's obligation provided for in paragraph 2 may, under the circumstances that his employer, Faherty & Swartwood, Inc., may not have substantial pre-tax earnings, be difficult for him to perform.

(b) Any arrearages which may develop in payment of the obligations provided for in paragraph 2 shall be *weighed* in connection with the amount of his fixed annual salary and the fiscal year-end pre-tax earnings of the said employer, since a distribution of said earnings or a loan on the basis of such earnings is expected to be the sole way in which the husband could meet the said obligations, or make up any arrearages which may accumulate thereunder.

(c) Nothing in this paragraph shall be deemed to apply to, modify or limit any portion of this Agreement with the exception of the said paragraph *2*. [Emphasis added.]

Further, the Agreement included the following clauses: a release by each party of all equitable division of marital assets and all community property interests except for those provided in the Agreement; an integration clause stating that the Agreement represented the parties' entire understanding and that "there are no representations, promises, warranties, covenants or undertakings other than those expressly set forth herein"; a

---

considered to be in default 30 days after due date and thereafter bear 8% interest plus reasonable collection charges, *said notes to be treated as commercial obligations binding on the husband's estate as debts; neither his death nor any act* of the wife other than her death, shall limit or modify this obligation * * *. [Emphasis added.]

default clause, whereby Roger agreed that if he should default in performing any obligation under the Agreement, he would pay to Susan counsel fees she reasonably incurred to enforce her rights under the Agreement; and a provision that the Agreement shall be governed by the laws of New Jersey.

The present case arose when Susan moved in the Chancery Division for an order fixing past-due alimony and child support and compelling discovery of defendant's business records. Susan claimed that Roger was in arrears of $25,400 in support payments and had defaulted on one of the equitable-distribution promissory notes of $25,000. Roger cross-moved, seeking to compel arbitration of the arrearages pursuant to paragraphs 20 and 25 and seeking arbitration as to the amounts of future payments because he claimed significantly changed circumstances. The Chancery Division issued an order compelling arbitration of arrearages of alimony and child support as well as the issue of modification of future payments of alimony and child support in accordance with the Agreement.

Subsequently, the parties selected an arbitrator according to the rules of the AAA. The issues submitted to arbitration were Susan's claims for arrearages in alimony and child support, for future alimony and child support, as well as Roger's claim that both the arrearages in alimony and child support and future payments thereof should be reduced due to his changed circumstances.

The arbitration took several months. It included several lengthy days of examination, cross-examinations, exchange of post-hearing and reply briefs, and, finally, the entry of the arbitrator's award on January 18, 1981. The arbitrator made no written findings of fact and neither of the parties requested a written transcript.

The arbitrator's award fixed the alimony arrearages of $37,648 and child support arrearages of $12,284. The award also denied Roger's requests for reduction in future alimony, if any, and future child support. Thereafter, Susan moved in the

Chancery Division to confirm the arbitration award. Roger cross-moved to vacate the arbitrator's award and to obtain court hearings for modification of his prior and future payments due to his changed circumstances and for modification of his payments in lieu of equitable distribution.

The Chancery Division confirmed the arbitration award and denied Roger's motion. Although Roger had originally petitioned the court to compel arbitration, in his appeal to the Appellate Division, for the first time, he challenged the validity of the arbitration clause and also sought to overturn the Chancery Division's confirmation of the arbitration award. The Appellate Division, in a brief *per curiam* opinion, found that all issues of law raised by Roger were clearly without merit.

Roger makes two basic claims. The first is that arbitration of domestic disputes between former spouses regarding alimony and child support should not, as a matter of public policy, be permitted to be settled outside the courts, and therefore the arbitration clause in the Agreement should not be enforced. The second is that the arbitration award in this case was erroneous and should be overturned.

## II

Although it is clear that marital separation agreements are enforceable in this state insofar as "they are just and equitable," *Schlemm v. Schlemm*, 31 *N.J.* 557 (1960), this Court has never before addressed the question of the enforceability of an arbitration clause in a separation agreement.

In this state, as in most American jurisdictions, arbitration is a favored remedy. It permits parties to agree to resolve disputes outside of the court system. A court generally will enforce an arbitration agreement unless it violates public policy. *E.g., Barcon Assocs., Inc. v. Tri-County Asphalt Corp.*, 86 *N.J.* 179, 186 (1981) (arbitration favored by the courts of this state); *Johowern Corp. v. Affiliated Interior Designers, Inc.*, 187 *N.J.Super.* 195 (App.Div.1982) (same); *Ukrainian Nat'l*

*Urban Renewal Corp. v. Joseph L. Muscarelle, Inc.*, 151 *N.J. Super.* 386 (App.Div.), certif. den., 75 *N.J.* 529 (1977) (same); *Hudik-Ross, Inc. v. 1530 Palisade Ave. Corp.*, 131 *N.J.Super.* 159 (App.Div.1974) (same); *New Jersey Mfrs. Ins. Co. v. Haran*, 128 *N.J.Super.* 265 (App.Div.1974) (same).

In recent years arbitration has been used more frequently as a viable means of resolving domestic disputes that arise under separation agreements. *See* Comment, "The Enforceability of Arbitration Clauses in North Carolina Separation Agreements," 15 *Wake Forest L.Rev.* 487 (1979). In other jurisdictions around the country courts have consistently enforced arbitration clauses to settle matrimonial disputes. *See* Sterk, "Enforceability of Agreements to Arbitrate: An Examination of the Public Policy Defense," 2 *Cardozo L.Rev.* 481, 493 (1981); *cf. In re Mesmer's Estate*, 94 *Cal.App.* 97, 270 *P.* 732 (Ct.App. 1928) (parties may leave matters concerning support of wife to arbitration); *Masterson v. Masterson*, 22 *Ky.* 1193, 60 *S.W.* 301 (1901) (agreement to arbitrate issues of alimony, custody, and child support); *Schneider v. Schneider*, 17 *N.Y.*2d 123, 216 *N.E.*2d .318, 269 *N.Y.S.*2d 107 (1966) (agreement to arbitrate child support disputes held to be enforceable); *Sheets v. Sheets*, 22 *A.D.*2d 176, 254 *N.Y.S.*2d 320 (App.Div.1964) (agreement to submit issue of child custody to arbitration held valid and enforceable); *Crutchley v. Crutchley*, 306 *N.C.* 518, 293 *S.E.*2d 793 (1982) (strong dicta indicating that agreements to arbitrate alimony and child support disputes are enforceable).

This issue has been addressed in only one case in this state. *See Wertlake v. Wertlake*, 127 *N.J.Super.* 595 (Ch.Div.1974), rev'd, 137 *N.J.Super.* 476 (App.Div.1975). Although the Chancery Division in *Wertlake* cited cases from several jurisdictions upholding arbitration of disputes over alimony and child support and cited no contrary precedent, it held that child support was a nonarbitrable issue because of the state's exclusive *parens patriae* relationship to children. The Appellate Division reversed, holding that the validity of the arbitration clause was not in controversy since the parties had submitted their dispute

to the court and had not sought arbitration. Thus, the lower court's statement on arbitration was mere dicta. *Wertlake v. Wertlake, supra* 137 *N.J.Super.* at 490–91. Therefore, today's decision is written on a clean slate.

### III

■ Our arbitration statute, *N.J.S.A.* 2A:24–1 to –11, recognizes the validity of arbitration as a means of resolving contractual disputes between parties.[2] As discussed earlier in this opinion, New Jersey has long recognized the validity and enforceability of separation agreements between divorcing spouses. *See Schlemm, supra,* 31 *N.J.* 557. Enforcement of arbitration clauses pertaining to alimony as within such agreements is a logical extension of the view, expressed in *Schlemm,* that parties should be granted as much autonomy as possible in the ordering of their personal lives. Since parties may settle spousal support rights and obligations by contract, *Schlemm, supra,* 31 *N.J.* at 581, there is no policy reason to prohibit their submitting disputes arising out of such contracts to binding arbitration. It is fair and reasonable that parties who have agreed to be bound by arbitration in a formal, written separation agreement should be so bound. Rather than frowning on arbitration of alimony disputes, public policy supports it. We recognize that in many cases arbitration of matrimonial disputes may offer an effective alternative method of dispute resolution. As commentators have noted, the advantages of arbitration of domestic disputes include reduced court congestion, the opportunity for resolution of sensitive matters in a

---

2  2A:24–1. Arbitration provisions; validity and effect

A provision in a written contract to settle by arbitration a controversy that may arise therefrom or a refusal to perform the whole or a part thereof or a written agreement to submit, pursuant to section 2A:24–2 of this title, any existing controversy to arbitration, whether the controversy arise out of contract or otherwise, shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract.

private and informal forum, reduction of the trauma and anxiety of marital litigation, minimization of the intense polarization of parties that often occurs, and the ability to choose the arbitrator. *See* Comment, 15 *Wake Forest L.Rev., supra,* at 490. In this sensitive and intensely private area of domestic disputes, arbitration expressly contracted for by the spouses is highly desirable. We accordingly hold today that under the laws of New Jersey, parties may bind themselves in separation agreements to arbitrate disputes over alimony. As is the case with other arbitration awards, an award determining spousal support would be subject to the review provided in *N.J.S.A.* 2A:24–8.

## IV

Our inclination to embrace arbitration in all phases of matrimonial disputes is tempered, however, by our knowledge that in such cases competing public policy considerations abound. Accordingly, the principle issue involved here is whether public policy prohibits arbitration from resolving child support and custody disputes.

Although it is generally accepted that spouses may enter enforceable agreements to arbitrate alimony disputes, some commentators have suggested that arbitration is unsatisfactory to resolve disputes concerning child support or custody because of the court's traditional role as *parens patriae.* Traditionally, courts under the doctrine of *parens patriae* have been entrusted to protect the best interests of children. Children's maintenance, custody-visitation, and overall best interests have always been subject to the close scrutiny and supervision of the courts despite any agreements to the contrary. Some commentators see arbitration as a dangerous encroachment on this jurisdiction. *See* Holman & Noland, "Agreement and Arbitration: Relief to over-litigation in domestic relations disputes in Washington," 12 *Willamette L.J.* 527, 537 (1976). Since parents cannot by agreement deprive the courts of their duty to pro-

mote the best interests of their children, it is argued that they cannot do so by arbitration.

Detractors notwithstanding, there has been a growing tendency to recognize arbitration in child support clauses. We do not agree with those who fear that by allowing parents to agree to arbitrate child support, we are interfering with the judicial protection of the best interests of the child. We see no valid reason why the arbitration process should not be available in the area of child support; the advantages of arbitration in domestic disputes outweigh any disadvantages.

Nevertheless, we recognize that the courts have a nondelegable, special supervisory function in the area of child support that may be exercised upon review of an arbitrator's award. We therefore hold that whenever the validity of an arbitration award affecting child support is questioned on the grounds that it does not provide adequate protection for the child, the trial court should conduct a special review of the award. This review should consist of a two step analysis. First, as with all arbitration awards, the courts should review child support awards as provided by *N.J.S.A.* 2A:24-8.[3] Second, the courts should conduct a *de novo* review unless it is

---

[3] 2A:24-8. Vacation of award; rehearing

The court shall vacate the award in any of the following cases:

a. Where the award was procured by corruption, fraud or undue means;

b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;

c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

When an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

clear on the face of the award that the award could not adversely affect the substantial best interests of the child.

An arbitrator's award that grants all the requested child support would generally satisfy this second test because it is always in the child's best interest to have as much support as possible. Clearly such an award does not adversely affect the best interest of the child. In such cases, the spouse challenging the award would be limited to the statutory grounds for vacation or modification provided in *N.J.S.A.* 2A:24-8 because the state's interest in protecting the child has already been established. Thus, only an arbitrator's award that either reduced child support or refused a request for increased support could be subject to court review beyond the review provided by statute, because only such an award could adversely affect the interests of the child. However, even awards reducing support would be subject to court review only if they adversely affected the *substantial* best interests of the child. The substantial best interests of the child are not affected when the reduction in support or the denial of additional support is petty or frivolous, but only when it actually and materially affects the child's standard of living.

While several states have enforced agreements to arbitrate child support disputes, arbitration of custody and visitation issues has been deemed to be an unacceptable infringement of the court's *parens patriae* role. We do not reach the question of whether arbitration of child custody and visitation rights is enforceable since that issue is not before us. However, we note that the development of a fair and workable mediation or arbitration process to resolve these issues may be more beneficial to the children of this state than the present system of courtroom confrontation. *See* Schepard, Philbrick & Rabino, "Ground Rules for Custody Mediation and Modification," 48 *Alb.L.Rev.* 616 (1984). Accordingly, the policy reasons for our holding today with respect to child support may be equally applicable to child custody and visitation cases.

As we gain experience in the arbitration of child support and custody disputes, it may become evident that a child's best interests are as well protected by an arbitrator as by a judge. If so, there would be no necessity for our *de novo* review. However, because of the Court's *parens patriae* tradition, at this time we prefer to err in favor of the child's best interest.

## V

Finally, we must decide whether the arbitrator's award should be confirmed in the present case. *N.J.S.A.* 2A:24–1 to –11 grants arbitrators "extremely broad powers and extends judicial support to the arbitration process subject only to limited review." *Barcon Assocs., Inc. v. Tri-County Asphalt Corp., supra,* 86 *N.J.* at 187.

Before turning to the facts of the present case, we note that the arbitrator made no written findings of fact. The AAA rules do not require such findings, but because alimony and child support are always subject to modification for changed circumstances, we suggest, but do not mandate, that the arbitrator in all future domestic dispute arbitrations make reasonably detailed findings of fact upon which she or he bases the arbitration award. Such findings will aid not only the court's review of the award but also will aid later arbitrators in determining requests for modification. Certainly, such findings of fact should be prepared if requested by either of the parties.

With these admonitions in mind, we find that in this case, the arbitrator's award is not subject to heightened scrutiny to protect the interests of the children because the award enforced their rights and protected their interests against Roger's claim of changed circumstances. In this case the state's interest in the welfare of the children has been protected and there is no public policy reason to subject the award to *de novo* review.

■ Of the statutory grounds for vacation of an arbitration award, Roger relies on *N.J.S.A.* 2A:24–8d, which provides that an arbitration award may be vacated:

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

Roger bases his claim on the contention that the arbitrator failed to weigh the evidence presented to him. Roger first claims that if the arbitrator had weighed the evidence of his income and his closely-held corporations' earnings, as required by paragraph 29(b) of the Agreement, he could not have made the award that he made. We have no record in this case and Roger has failed to provide any support for this contention. Next, Roger claims that the promissory notes, which, under the terms of the Agreement, were equitable distribution, were actually disguised alimony and as such should be subject to modification for changed circumstances. In the absence of any evidence to the contrary and in view of the language of the clause in issue, we hold that Roger failed to show that the arbitrator violated *N.J.S.A.* 2A:24–8d. Accordingly, there is no reason to vacate or modify the award on these grounds.

■ We are empowered to modify or correct arbitration awards in certain cases. *N.J.S.A.* 2A:24–9 allows us to correct errors when there was an evident miscalculation of figures or an evident mistake. Paragraph 29(d) of the Agreement provided that if Roger paid the November 1, 1977 real estate taxes on the family home in Summit, New Jersey, he would get a credit for that payment when any accumulated arrears were subsequently adjusted. It is undisputed that Roger paid $1,313.75 in real estate taxes and that the arbitrator failed to give him credit for that payment.

■ Further, under *N.J.S.A.* 2A:24–8(d), an award shall be vacated when the arbitrator exceeded his power. Since the parties agreed that the arbitrator would decide legal issues in accordance with the law of New Jersey, the award should not have granted Susan alimony in the future since she had remar-

ried. Accordingly, that part of the award is vacated. *See Local 1087, Communications Workers of America v. Monmouth Bd. of Social Servs.*, 96 *N.J.* 442 (1984).

With the exception of correcting these two minor errors, we approve the arbitrator's award as having satisfied all of the statutory and public policy requirements for confirmation.

The judgment of the Appellate Division is modified and as modified affirmed.

*For modification and affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, POLLOCK, O'HERN and GARIBALDI—6.

*Opposed*—None.