KELM, APPELLEE, *v.* KELM, APPELLANT.

[Cite as *Kelm v. Kelm* (1993), 68 Ohio St.3d 26.]

(No. 92–1523—Submitted September 21, 1993—Decided December 15, 1993.)

*Russell A. Kelm, pro se.*

*Abroms & Weisz, Hillard M. Abroms* and *Lora H. Cleary,* for appellant.

DOUGLAS, J. While this case has, and continues to have, a long and convoluted history, the single question before this court is whether, in a domestic relations case, matters of temporary spousal and/or child support may, by agreement of marriage partners, be made subject to an agreement to arbitrate. For the reasons that follow, we answer this question in the affirmative.

Arbitration, as a method of alternative dispute resolution, has long been favored in the law. See *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186; and *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872. Both parties agree with this proposition. Appellant argues, however, that regardless of the enforceability of an arbitration provision in an antenuptial agreement, the arbitration clause at issue, by its very terms, pertains only to matters of permanent spousal and/or child support and not matters of a temporary nature. Appellant also takes an alternate position,

urging that arbitration, even when there is an agreement to do so, does not serve the immediate needs of a spouse and children for support during the pendency of the divorce. Appellant further argues that taking away the power of the court, by arbitration agreement or otherwise, to determine and set temporary support, violates public policy since the court is deprived of its statutory jurisdiction and obligation to provide for the best interest of minor children involved in a divorce case.

Conversely, appellee contends that the arbitration provision was intended to cover, among other things, support matters of both a temporary and permanent nature. Appellee further disagrees with appellant's claim that temporary spousal and/or child support, if arbitrable, undermines a trial court's duty to provide for a spouse and minor children during the pendency of a domestic relations case. Appellee submits that arbitration can provide a quick and inexpensive resolution of matters in a matrimonial dispute and, if need be, a domestic relations court has the authority to supervise such proceedings.

Paragraph 10 of the parties' antenuptial agreement provides, in part, that:

"In the event of a dispute between the parties hereto over an arbitrable matter * * *, such dispute shall be resolved by arbitration to the extent permitted by law. A dispute over an arbitrable matter shall mean only (a) *a dispute as to the alimony or child support provisions incident to a termination of their marriage,* or (b) a dispute regarding the nature, extent and division of real or personal property acquired during their marriage. * * * " (Emphasis added.)

A portion of the parties' contentions focuses on an interpretation of the language "incident to a termination of their marriage," as used in the arbitration clause. Appellant asserts that this phrase only pertains to support matters which are of a permanent nature, while appellee argues that the phrase covers all matters of spousal and/or child support prior to and after a final decree of divorce.

We believe the court of appeals was correct in its determination of this issue, finding that the arbitration provision in the antenuptial agreement, by its plain language, affects temporary and permanent spousal and/or child support. The use of the words, "incident to," obviously encompasses not only those matters which are concomitant to a final decree of divorce but also matters which arise during the pendency of a matrimonial dispute.

It is clear that antenuptial agreements, when properly implemented, are enforceable in this state. *Gross v. Gross* (1984), 11 Ohio St.3d 99, 11 OBR 400, 464 N.E.2d 500. However, this court has not considered whether an agreement to arbitrate disputes in domestic relations matters, regarding spousal and/or child support, is enforceable. Other jurisdictions have confronted this or similar issues and have consistently approved of arbitration as a proper forum for determining

matters of support. In general, these jurisdictions have concluded that arbitration is a viable means of resolving disputes incident to divorce or separation. See, *e.g.*, *Bandas v. Bandas* (Va.App.1993), 430 S.E.2d 706; *Faherty v. Faherty* (1984), 97 N.J. 99, 477 A.2d 1257; *Schneider v. Schneider* (1966), 17 N.Y.2d 123, 269 N.Y.S.2d 107, 216 N.E.2d 318; and *Hirsch v. Hirsch* (1975), 37 N.Y.2d 312, 372 N.Y.S.2d 71, 333 N.E.2d 371. See, also, *Spencer v. Spencer* (D.C.1985), 494 A.2d 1279; *Masters v. Masters* (1986), 201 Conn. 50, 513 A.2d 104. Compare *Crutchley v. Crutchley* (1982), 306 N.C. 518, 293 S.E.2d 793.

This court has frequently recognized the validity and enforceability of agreements to arbitrate in many areas of the law. "Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute * * * [and] ' * * * has the additional advantage of unburdening crowded court dockets.'" *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 712, 590 N.E.2d 1242, 1245. Given the benefits of arbitration, and our pronouncements on the subject, we see no reason why agreements to arbitrate should not be included in the area of domestic relations. The time has come to join the rulings and views espoused by our sister jurisdictions in this area. Therefore, we hold that in a domestic relations case, matters of temporary or permanent spousal and/or child support may, by mutual consent of marriage partners, be made subject to an agreement to arbitrate. Further, we note that the court of appeals was correct in concluding that attorney fees were part of "support" to which appellant was entitled. See R.C. 3105.18(H).

Appellant takes particular offense at the acquiescence of the court of appeals allowing for arbitration of disputes concerning matters of temporary child support. Appellant cites Civ.R. 75 and various sections of R.C. Title 31, urging that disputes concerning child support are exclusively within the province of a trial court as *parens patriae* and are, therefore, not arbitrable as a matter of law and public policy.

There is no question that pursuant to Civ.R. 75 and R.C. Title 31 courts are provided with broad authority over such matters as spousal support, child support, and custody of children. However, there is nothing in either the rule or statutory scheme which prohibits parties to a marital dispute from agreeing to arbitrate any differences that may arise with respect to "support."

The Supreme Court of New Jersey in *Faherty, supra*, determined that parties may bind themselves in separation agreements to arbitrate disputes over spousal and child support. *Faherty*, 97 N.J. at 107–109, 477 A.2d at 1261–1263. Further, in considering the competing public policy concerns regarding child support and matters of custody, the *Faherty* court reasoned that:

"Although it is generally accepted that spouses may enter enforceable agreements to arbitrate alimony disputes, some commentators have suggested that

arbitration is unsatisfactory to resolve disputes concerning child support or custody because of the court's traditional role as *parens patriae*. Traditionally, courts under the doctrine of *parens patriae* have been entrusted to protect the best interests of children. Children's maintenance, custody-visitation, and overall best interest have always been subject to the close scrutiny and supervision of the courts despite any agreements to the contrary. Some commentators see arbitration as a dangerous encroachment on these jurisdictions. * * * Since parents cannot by agreement deprive the courts of their duty to promote the best interest of their children, it is argued that they cannot do so by arbitration.

"Detractors notwithstanding, there has been a growing tendency to recognize arbitration in child support cases. We do not agree with those who fear that by allowing parents to agree to arbitrate child support, we are interfering with the judicial protection of the best interests of the child. We see no valid reason why the arbitration process should not be available in the area of child support; the advantages of arbitration in domestic disputes outweigh any disadvantages." *Faherty*, 97 N.J. at 108–109, 477 A.2d at 1262–1263.

Appellant implies that once a determination is made that spousal and/or child support is an arbitrable matter, such concerns are completely beyond the supervisory power of a trial court. However, this is not the case. As is evident by R.C. Title 31 and Civ.R. 75, trial courts have a duty to ensure that spouses and/or children are adequately protected. In situations arising out of divorce or legal separation, trial courts, or arbitrators for that matter, are bound, at all times during the proceedings, to protect the best interests of the child and to also ensure that sufficient means are provided to a spouse in need of support. This, of course, may include such matters which are of a temporary or permanent nature. Thus, we hold that R.C. Title 31 and Civ.R. 75, read in conjunction with R.C. Chapter 2711, allow a trial court to intervene and oversee that arbitration of matters of spousal and/or child support, whether of a temporary or permanent nature, is accomplished in an expeditious, efficient, and reasonable manner. We believe that the best interest of a child and the interest of a spouse can be protected as well by the arbitration process as by a trial court. However, if the arbitration process fails in any respect to protect the interest of a child or spouse, trial courts have the authority to use, and we encourage them to do so, their contempt powers to ensure that the process is accomplished in an expeditious, efficient, and reasonable manner.

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

WRIGHT, J., concurs in part and dissents in part.

WRIGHT, J., concurring in part and dissenting in part. While I agree with the outcome and the bulk of the majority opinion, I believe the decision leaves a serious issue unresolved.

The majority clearly and correctly holds that, by mutual consent, marriage partners may agree to arbitrate matters of spousal and/or child support. Furthermore, the majority decision correctly permits a trial court to intervene and . oversee that these matters are accomplished in an expeditious, efficient, and reasonable manner.

However, the majority opinion fails to deal with the power of the trial court to grant a temporary order concerning spousal and/or child support pending the outcome of the arbitration. With no guidance from the court on this issue, we do not resolve the entire problem with which we have been presented.

Inasmuch as there is no established time period for resolving an arbitration dispute, the court's decision invites injustice. An arbitration proceeding regarding matters of either temporary or permanent spousal and/or child support may involve a delay of six months or even longer. During this period of time these matters simply must be addressed and I am satisfied that we should vest the trial court with this power.

Thus, because the majority's opinion fails to address this issue, I respectfully concur in part and dissent in part.