672 A.2d 1147

GARRETT M. HEHER, PLAINTIFF–APPELLANT AND CROSS–RE-SPONDENT, v. SMITH, STRATTON, WISE, HEHER AND BREN-NAN, A NEW JERSEY GENERAL PARTNERSHIP, WILLIAM J. BRENNAN, III, HUGH D. WISE, JR., HENRY S. BROAD, JOHN ROBERT HEHER, ARTHUR S. LANE, CHRISTOPHER S. TARR, ANNE REICHELDERFER, ALEXANDER P. WAUGH, JR., WENDY L. MAGER, RICHARD J. PINTO, BRIAN P. SULLIVAN, SUZANNE M. MCSORLEY, MARSHA E. NOVICK, ROBERT C. JOHNSTON, PETER R. FREED, THOMAS E. HASTINGS, ELIZ-ABETH R. SALASKO, DOROTHY FECHT LUNTEY, DAVID J.

SORIN, JAMES SCOTT HILL, ROBERT P. GORMAN, AND ED-
WIN B. KAGAN, DEFENDANTS–RESPONDENTS AND CROSS–
RESPONDENTS, AND TODD D. JOHNSTON AND ROBERT A.
WHITE, DEFENDANTS–RESPONDENTS AND CROSS–APPEL-
LANTS, AND EDWARD J. GEOGHEGAN AND JOHN DOE AND
JANE DOE, SAID NAMES BEING FICTITIOUS, DEFENDANTS.

Argued September 27, 1995—Decided March 6, 1996.

450

*Richard M. Altman* argued the cause for appellant and cross-respondent (*Pellettieri, Rabstein and Altman,* attorneys).

*Bruce W. Clark* argued the cause for respondents and cross-appellants (*Dechert, Price & Rhoads,* attorneys; *Mr. Clark, Todd D. Johnston,* and *Robert A. White, pro se,* on the briefs).

*William B. McGuire* argued the cause for respondents and cross-respondents (*Tompkins, McGuire & Wachenfeld,* attorneys; *Marianne M. DeMarco,* on the briefs).

The opinion of the Court was delivered by

STEIN, J.

In *Weiss v. Carpenter, Bennett & Morrissey,* 143 *N.J.* 420, 672 *A.*2d 1132 (1995), also decided today, we considered the appropriate standard of judicial review of private-sector arbitration awards involving the validity of law-firm agreement termination provisions in the context of *Rule* 5.6 of the Rules of Professional Conduct (*RPCS*). The primary issue in this appeal is the collateral question whether an arbitration provision of a law firm agreement is enforceable if the dispute in question implicates the clear mandate of public policy underlying *RPC* 5.6.

The Smith, Stratton, Wise, Heher and Brennan (SSWH & B) partnership agreement (Agreement) provided for arbitration of "[a]ny dispute arising out of [the] agreement or the partnership relationship," and further provided that arbitration was to be "the sole forum for the resolution" of such disputes. The arbitrators' award was to be "final" and not appealable "to any court." The Agreement also provided that partners who withdrew from the firm and "thereafter compete[d] with the firm in any way" forfeited certain benefits available to partners who withdrew from the firm but did not compete (the "forfeiture provision").

In *Jacob v. Norris, McLaughlin & Marcus,* 128 *N.J.* 10, 22–26, 607 *A.*2d 142 (1992), we held invalid under *RPC* 5.6 a provision of a law-firm partnership agreement that required departing partners to forfeit termination-related compensation if they competed with

the firm. Relying on *Jacob,* plaintiff, Garrett M. Heher (Heher), filed a complaint in the Chancery Division seeking to enjoin arbitration of his dispute with SSWH & B over the enforceability of the forfeiture provision of the SSWH & B Agreement. Heher claimed that arbitration of the dispute was precluded because the forfeiture provision was clearly void under *Jacob.* SSWH & B moved to stay proceedings on Heher's complaint pending arbitration of all contested issues. The trial court, reasoning that the forfeiture provision was unenforceable pursuant to *Jacob,* concluded that Heher's challenge to the forfeiture provision need not be submitted to arbitration, but referred the remaining contested issues to arbitration. In an unreported *per curiam* decision, the Appellate Division reversed, holding that the entire dispute between Heher and SSWH & B was subject to arbitration pursuant to the terms of the partnership agreement.

I

Heher was a partner in the law firm of SSWH & B from 1966 to August 4, 1986, when he voluntarily withdrew from the firm. Heher continued to engage in the private practice of law in New Jersey, and a number of Heher's former clients continued to retain him following his withdrawal. The partnership agreement at issue was in effect from June 1, 1983, through at least August 1987. Article IV(4) of the Agreement provided:

> Upon the termination of a partner's interest in the firm by death or permanent disability; or upon a partner's termination other than by death or permanent disability, provided that he has been a partner for at least five (5) years and does not thereafter compete with the firm in any way (including, without limitation, by engaging in the private practice of law in New Jersey, whether as a sole practitioner or member, principal or associate in a law firm), the firm shall pay to him (or his estate; hereinafter together "former partner"), the following benefits:
>
> (1) A stated benefit....
>
> (2) A supplemental benefit....

The "stated benefit" was defined as "an amount equal to the average of the partner's annual compensation from the firm ... for the five (5) consecutive years next before the firm year in which his interest in the firm was terminated." The Agreement

further provided that SSWH & B's obligation to pay stated benefits in any given year would be limited to a certain percentage of the firm's gross receipts for the prior year. The Agreement provided that the stated benefit would be paid in eight equal quarterly installments commencing in the first quarter following the partner's termination.

The "supplemental benefit," which was to be paid in each of the three years following the year in which the last stated benefit was made, was defined as "twenty percent (20%) of the gross fees received in each such year from the clients of the terminated partner." The supplemental benefit would be paid only if gross fees received from the terminated partner's clients during the eight calendar quarters following his termination (or thereafter received for work done for those clients during that period) equalled at least twice the amount of the total stated benefit paid to the terminated partner.

Article V of the Agreement provided for arbitration of all disputes:

5.1 Any dispute arising out of this agreement or the partnership relationship, including a dispute whether a given dispute arises out of this agreement or the relationship, shall be submitted to arbitration.

5.2 Arbitration shall be the sole forum for the resolution of disputes arising out of this agreement or the partnership relationship. The arbitrators' award resolving any such dispute shall be final and shall not be appealed to any court.

After withdrawing from the firm, Heher informed SSWH & B of his intention to arbitrate certain disputes arising on his withdrawal. The parties never commenced arbitration proceedings, however, either because Heher did not pursue arbitration or because the two arbitrators named by the parties never met to choose a third arbitrator as provided for by the Agreement.

Defendants Robert A. White and Todd D. Johnston became partners in the firm in 1978. They withdrew from SSWH & B in July 1987, about one year after Heher had left the firm. On leaving SSWH & B, White and Johnston joined the law firm of Dechert, Price & Rhoads and engaged in competition with SSWH & B. In November 1987, White and Johnston demanded arbitra-

tion of a variety of contested issues, including their entitlement to the stated benefit under the Agreement. In their "Statement of Issues," White and Johnston specifically raised the issue of the enforceability of the forfeiture provision. On February 13, 1992, the arbitrators issued a lengthy decision in which they made awards to White and Johnston on a number of other contested matters, but, holding the forfeiture provision valid, declined to award White and Johnston their stated benefits. The arbitrators rejected White's and Johnston's requests to defer decision on the enforceability of the forfeiture provision until this Court decided *Jacob, supra,* which was then pending. On February 25, 1992, SSWH & B issued checks to White and Johnston in partial satisfaction of the arbitration award. White and Johnston accepted and negotiated the checks. Both sides moved for reconsideration. On April 20, 1992, the arbitrators denied the reconsideration motions but modified the award. On April 23, 1992, SSWH & B issued checks to White and Johnston for the balance due under the modified award. White and Johnston also accepted and negotiated those checks.

This Court issued its decision in *Jacob, supra,* on May 28, 1992. Thereafter, in August 1992, Heher filed a complaint in Superior Court, Chancery Division, against SSWH & B and a number of former and current members of the firm, including White and Johnston. Heher alleged that the forfeiture provision of Article IV(4) of SSWH & B's Agreement was void as a matter of public policy and that he was therefore entitled to the stated benefit provided for in the Agreement. He further alleged that "[b]ecause the non-compete requirement of Article IV(4) is void as a matter of public policy, that issue cannot be [ ] subject to a binding non-appealable arbitration as required by Article V of the Agreement and is therefore subject to the jurisdiction" of the courts. Heher sought a permanent injunction preventing SSWH & B from arbitrating the issue of his entitlement to the stated benefit under the Agreement. Heher also demanded judgment in an amount equal to the stated benefit, together with prejudgment interest, attorneys' fees, and costs. Lastly, Heher demanded that SSWH

& B provide an accounting of gross fees received by the firm so that Heher could determine whether he was entitled to assert a claim for the supplemental benefit provided for by the Agreement.

SSWH & B moved to dismiss Heher's complaint or to stay proceedings on the complaint pending an arbitration to determine Heher's entitlement to benefits under the Agreement. Heher filed a cross-motion for summary judgment on the issue of the arbitrability of the dispute and also on his claim for the stated benefit plus prejudgment interest, fees, and costs. Defendants White and Johnston moved to dismiss Heher's complaint as to them.

The trial court ruled that the validity of the forfeiture provision was a "pure question of law," about which there was "nothing to arbitrate." Finding the forfeiture provision "void," the court concluded that the issue of Heher's entitlement to compensation under the Agreement was not arbitrable, but noted that if the parties had a dispute "as to the amounts due, prejudgment interest, [or the] liability of individual partners," then arbitration would be appropriate. The court therefore denied SSWH & B's motion to dismiss Heher's complaint, but withheld decision on Heher's cross-motion for summary judgment pending further submissions from the parties.

SSWH & B moved for reconsideration of the denial of its motion to dismiss Heher's complaint. The firm conceded that Heher had stated accurately his earnings for the years 1982 through 1986, inclusive, on which his claim for stated benefits relied. The firm alleged, however, that Heher's departure from the firm with seven or eight of the firm's "major" clients decreased SSWH & B's prospective earnings and diminished the value of its goodwill. The firm referred specifically to Article IV(8) of the Agreement and implied that Heher's claim to benefits under the Agreement was affected by the alleged loss in firm goodwill. Article IV(8), which apparently relates only to the tax treatment of benefits received under the Agreement, provided in relevant part:

> The [stated and supplemental] benefits provided in this Article IV represent payments for a former partner's interest in partnership goodwill, and as such are made for said partner's interest in partnership property under I.R.C. section 736(b)(2)(B), entitling said partner or the successor in interest of a deceased partner to capital gains treatment.

The firm also contended that Heher was estopped from asserting the invalidity of the forfeiture provision because, as a senior partner and a member of the firm's Finance Committee, he had participated in drafting the Agreement.

White and Johnston filed an answer to Heher's complaint and a cross-claim against SSWH & B for stated benefits under the Agreement, seeking to void the February 1992 arbitration award, which denied them their stated benefits. They also sought indemnification from SSWH & B in the event they became personally liable for monies owed to Heher. White and Johnston simultaneously filed a motion for summary judgment on their cross-claims for stated benefits. SSWH & B filed a cross-motion to dismiss White's and Johnston's cross-claims.

The trial court denied in part and granted in part SSWH & B's motion for reconsideration, confirming the court's prior ruling that the forfeiture provision was void, but ordering arbitration of all other contested issues. The court also granted in part and denied in part Heher's cross-motion for summary judgment. The court found that the uncontested amount of the stated benefit due Heher under the Agreement was $143,355, and referred to arbitration the following issues: (1) whether Heher was entitled to prejudgment interest, and if so, from what date, and in what amount; (2) whether Heher's stated benefit of $143,355 should be adjusted to account for loss of goodwill, as alleged by SSWH & B; and (3) whether Heher was estopped from asserting the invalidity of the forfeiture provision because of his participation in drafting the Agreement. The court directed the arbitrators to make specific findings of fact and to state specific reasons for their determinations on all issues.

Regarding White and Johnston, the court denied their summary judgment motion against SSWH & B and granted SSWH & B's cross-motion to dismiss their cross-claims for benefits. The court reasoned that the cross-claims were untimely, because White and Johnston had failed to move to vacate the February 1992 arbitration award within three months of this Court's decision in *Jacob*. The trial court granted White and Johnston's cross-motion to dismiss Heher's complaint as to them, over the objection of SSWH & B that White's and Johnston's individual liability to Heher raised an arbitrable issue. The trial court reasoned that Heher's claim for benefits did not arise until after White and Johnston had left the firm.

Heher appealed and moved to stay arbitration pending appeal. SSWH & B cross-appealed, as did White and Johnston. The trial court stayed arbitration pending appeal, and ordered that count three of Heher's complaint, seeking supplemental benefits under the Agreement, be subject to arbitration.

The Appellate Division determined that arbitrators "are not precluded from deciding issues implicating public policy," and observed that *Jacob* did not hold that "only courts are capable of implementing the rule of law enunciated in that opinion." Accordingly, the court concluded that the trial court should have stayed all proceedings arising from Heher's complaint—including Heher's challenge to the forfeiture provision—pending arbitration of all issues, noting that the arbitrators' decision would be subject to judicial review consistent with *Faherty v. Faherty*, 97 *N.J.* 99, 109–10, 477 *A.*2d 1257 (1984), and *Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.*, 135 *N.J.* 349, 364, 640 *A.*2d 788 (1994). The court therefore reversed the denial of SSWH & B's motion to stay litigation and ordered the arbitration to proceed forthwith. The court also reversed the trial court's dismissal of Heher's claim against White and Johnston. The court noted that White and Johnston, as signatories to the Agreement, had agreed to arbitrate all disputes, including disagreements about "whether a given dispute arises out of [the] [A]greement *or the relationship,*"

reasoning that the issue of whether Heher's claim had arisen before White and Johnston had terminated their relationship with SSWH & B was "precisely the type of issue" the parties had agreed to arbitrate.

Regarding White and Johnston's cross-appeal, the Appellate Division affirmed the trial court's dismissal of their cross-claims for benefits under the Agreement. The Appellate Division reasoned that the cross-claims were untimely because White and Johnston had failed to bring suit to vacate the February 1992 arbitration award within three months of delivery of the award. See *N.J.S.A.* 2A:24–7. Responding to White and Johnston's assertion that *Jacob, supra,* provided them with a "new" cause of action, the Appellate Division held that that action was one that arose out of the "partnership relationship," obligating White and Johnston to submit the matter to arbitration.

On Heher's motion for reconsideration, the Appellate Division issued a supplemental order requiring the arbitrators to issue a written opinion setting forth findings of fact and legal conclusions to facilitate judicial review.

Heher filed a petition for certification and White and Johnston filed a cross-petition. Heher seeks review of the Appellate Divisions' decision ordering arbitration of all issues. Heher contends that the invalidity of the forfeiture provision is not arbitrable, that SSWH & B's alleged defenses based on estoppel and loss of goodwill are not available under the facts of this case, and that the amount of prejudgment interest due is not disputed. He therefore asserts that he is entitled to the stated benefit of $143,355, because "there is nothing left to arbitrate."

In their cross-petition, White and Johnston seek review of the Appellate Division's affirmance of the dismissal of their cross-claims against SSWH & B. They also seek review of the Appellate Division's reversal of the trial court's dismissal of Heher's complaint as to them. We granted Heher's petition for certification, and White and Johnston's cross-petition, 140 *N.J.* 326, 658 *A.*2d 726 (1995), and now affirm.

## II

■ Regrettably, our disposition of this appeal prolongs the delay in resolving Heher's claim for compensation from SSWH & B emanating from his withdrawal from the firm in 1986. Nevertheless, concerning the primary issue before us—whether the arbitration provision of SSWH & B's partnership agreement is enforceable if the pending dispute implicates the clear mandate of public policy underlying *RPC* 5.6—we are firmly convinced that Heher's claim for termination benefits must proceed to arbitration despite the public-policy issues implicit in his challenge to the validity of the forfeiture provision. That conclusion is fortified by our confidence in arbitration and in the ability of arbitrators to resolve such disputes in a manner consistent with the public policies underlying *RPC* 5.6. As we observed in *Weiss, supra:*

Our longstanding endorsement of arbitration as a favored remedy, see *Faherty, supra,* 97 *N.J.* at 105 [477 *A.*2d 1257], reflects its value as a procedure for resolving disputes out of court that in the process combines the advantages of privacy and efficiency. Its virtues have special application to conflicts arising out of agreements between lawyers in practice together. Such conflicts are best resolved quickly and efficiently, and the parties' best interests are likely to be served by a dispute-resolution process that limits notoriety about the underlying issues.

That the dispute may require the arbitrator to address and resolve issues that affect public policy does not lead to the conclusion that the parties must forego the advantages of arbitration and turn at once to the courts.

[143 *N.J.* at 440, 672 *A.*2d at 1143.]

*See also Hackett v. Milbank, Tweed, Hadley & McCloy,* 80 *N.Y.*2d 870, 871–72, 587 *N.Y.S.*2d 598, 599, 600 *N.E.*2d 229, 230 (1992) (holding that dispute over withholding of law partner's right to receive termination benefits from firm should proceed to arbitration despite contention that denial of benefits would violate public policy); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 *U.S.* 20, 27–28, 111 *S.Ct.* 1647, 1653, 114 *L.Ed.*2d 26, 38 (1991) (holding that important public policies underlying Age Discrimination in Employment Act do not preclude compulsory arbitration of claim asserting violation of Act). Moreover, the arbitrator's disposition will be subjected to an enhanced level of judicial review in order to afford appropriate relief from an arbitration award that obviously would frustrate a clear mandate of public policy. *Weiss, supra,*

143 *N.J.* at 443, 672 *A.*2d at 1144. Thus, in requiring that the dispute proceed first to arbitration, we assure that the parties honor their contractual commitment to arbitrate, presuming that the arbitrator's award will vindicate the public-policy interests at stake in a manner consistent with our holdings in *Jacob* and *Weiss*, but reserving the power of judicial review to override awards that violate a clear mandate of public policy. *Ibid.*

Concerning issues other than the validity of the forfeiture provision that are to be submitted to the arbitrator, we note that in *Weiss* we clarified our reference in *Jacob* to the possible application of estoppel principles to bar a partner from challenging an otherwise invalid forfeiture provision, observing that that statement referred only "to a unique and extraordinary exercise of control by a dominant partner in a law firm * * * [who] exerted a dominating influence in insisting that the forfeiture provision be enforced against withdrawing partners." *Id.* at 447, 672 *A.*2d at 1146.

■ We are fully in accord with the Appellate Division's conclusion that Heher's claim against White and Johnston also must be resolved in the arbitration. Contrary to the contention of White and Johnston, the arbitrator could find that Heher's claim against them as partners accrued in 1986 when the firm refused to pay Heher the "stated" and "supplemental" benefits pursuant to the partnership agreement, prior to the time that White and Johnston left the firm. Moreover, although White's and Johnston's potential liability to Heher is secondary to that of the partnership, their joinder as defendants in the proceeding that seeks to establish the partnership's liability is both appropriate and consistent with the entire controversy doctrine. *See Seventy–Three Land, Inc. v. Maxlar Partners*, 270 *N.J.Super.* 332, 335–38, 637 *A.*2d 202 (App. Div.1994); *La Mar–Gate, Inc. v. Spitz*, 252 *N.J.Super.* 303, 309–10, 599 *A.*2d 928 (App.Div.1991).

■ Finally, we agree with the Appellate Division's determination to uphold the trial court's dismissal of White's and Johnston's

cross-claims to vacate the February 1992 arbitration award, which enforced the forfeiture provisions of the partnership agreement against them. As the Appellate Division correctly observed, White and Johnston failed to comply with *N.J.S.A.* 2A:24–7, which requires that parties seeking to vacate an arbitrator's award do so within three months of the date the award was rendered. *See City of Atlantic City v. Laezza,* 80 *N.J.* 255, 268 n. 2, 403 *A.*2d 465 (1979).

## III

We affirm the judgment of the Appellate Division.

*For affirmance*—Chief Justice WILENTZ, and HANDLER, POLLOCK, GARIBALDI, COLEMAN and STEIN—6.

O'HERN, J., filed a separate opinion concurring in part and dissenting in part.

O'HERN, Justice, concurring in part and dissenting in part.

I concur in the opinion and judgment of the Court insofar as it orders arbitration of the contractual dispute subject to the standard of review set forth in the opinion of the Court. I do not agree, however, that defendants Johnston and White should at once be subject to the jurisdiction of the arbitrators for imposition of liability under the law firm's termination agreement without permitting the arbitrators to consider either the entitlement of Johnston and White to benefits under the agreement or the inequity of holding them liable for benefits to others without any credit for benefits to which they were equally entitled.