785 A.2d 907

GARRETT M. HEHER, PLAINTIFF–APPELLANT, v. SMITH, STRATTON, WISE, HEHER AND BRENNAN, A NEW JERSEY GENERAL PARTNERSHIP, WILLIAM J. BRENNAN, III, HUGH D. WISE, JR., HENRY S. BROAD, JOHN ROBERT HEHER, ARTHUR S. LANE, CHRISTOPHER S. TARR, ANN REICHELDERFER, ALEXANDER P. WAUGH, JR., WENDY L. MAGER, RICHARD J. PINTO, BRIAN P. SULLIVAN, SUZANNE M. MCSORLEY, MARSHA E. NOVICK, ROBERT C. JOHNSTON, PETER R. FREED, THOMAS E. HASTINGS, ELIZABETH R. SALASKO, DOROTHY FECHT LUNTEY, DAVID J. SORIN, JAMES SCOTT HILL, ROBERT P. GORMAN, EDWIN B. KAGAN, ROBERT D. FRAWLEY, DIANE M. FRENIER, ELLEN O'CONNELL, PAUL H. SHUR, WILLIAM E. MCGRATH, JR., THOMAS E. SCHORR, YALE H. BOHN AND GERALD D. WIXTED, DEFENDANTS–RESPONDENTS, AND TODD D. JOHNSTON, ROBERT A. WHITE, EDWARD J. GEOGHEGAN AND JOHN DOE AND JANE DOE, SAID NAMES BEING FICTITIOUS, DEFENDANTS.

Argued October 23, 2001—Decided December 5, 2001.

214

*John J. Francis, Jr.,* argued the cause for appellant (*Drinker, Biddle & Shanley,* attorneys; *Garrett M. Heher,* pro se, on the briefs).

*William B. McGuire* argued the cause for respondents (*Tompkins, McGuire, Wachenfeld & Barry,* attorneys; *Marianne M. DeMarco,* on the letter in lieu of brief).

The opinion of the Court was delivered by

COLEMAN, J.

The issue presented in this appeal is whether a notice defense contained in a law firm's Partnership Agreement (Agreement) should be disallowed based on special circumstances and equities reflected in the long and tortuous procedural history of the case. We hold that, on this record, the notice requirement in the Agreement is not enforceable.

I.

Plaintiff, Garrett M. Heher, was a partner in the law firm of Smith, Stratton, Wise, Heher, and Brennan (SSWH & B) from 1966 to August 4, 1986 when he voluntarily withdrew from the firm. As a partner, he helped to negotiate and draft the Agreement that was in effect between June 1, 1983 and August 1987.

Article IV (4) of the Agreement provided that a departing partner who had been a partner for five years and who did not thereafter compete with the firm in any way would be entitled to "a stated benefit" and "a supplemental benefit." The "stated benefit" was defined as "an amount equal to the average of the partner's annual compensation from the firm ... for five (5) consecutive years next before the firm year in which his interest in the firm was terminated." The Agreement provided that the stated benefits would be paid in eight equal quarterly installments commencing in the first quarter following the partner's termination. The "supplemental benefit," which was to be paid in each of three years following the year in which the last stated benefit was made, was defined as "twenty percent (20%) of the gross fees received in each such year from the clients of the terminated partner."

Article IV of the Agreement also provided for arbitration of all disputes arising under the Agreement or the partnership relationship, reflecting an intention that arbitration was to be the sole forum for the resolution of any such disputes. *Heher v. Smith, Stratton, Wise, Heher and Brennan (Heher I)*, 143 *N.J.* 448, 451–53, 672 *A.*2d 1147 (1996).

On November 17 and 26, 1986, October 5 and December 4, 1987, Heher filed notices of his intent to arbitrate his claim to partnership profits, access to records, and various issues arising out of his withdrawal from the firm. In view of the non-competition restriction in the agreement, however, he did not request arbitration related to the stated and supplemental benefits. In furtherance of the request to arbitrate, Heher and the firm each designated an arbitrator. A third arbitrator was never selected. Consequently, no arbitration hearing was ever held. In early 1987, the firm's attorney communicated with Heher's attorney in an attempt to resolve the dispute over the 1985–86 division of partnership shares and access to the firm records for that year. Correspondence was exchanged on February 12 and March 27, 1987. However, no further action was taken regarding the 1986 or 1987 notices of intent to arbitrate until August 1992.

On May 28, 1992, this Court decided *Jacob v. Norris, McLaughlin & Marcus*, 128 *N.J.* 10, 607 *A.*2d 142. There, the Court held that a restrictive covenant, such as the one contained in the present Agreement, was prohibited by the *Rules of Professional Conduct* (RPC), *RPC* 5.6. *Id.* at 22, 607 *A.*2d 142. The Court determined that the financial disincentive and the direct restrictive covenant were unenforceable as violative of public policy. *Id.* at 23, 607 *A.*2d 142. The Court found that such terms created a disincentive for the departing lawyer to represent those clients who wish to choose that lawyer as his or her counsel. *Id.* at 25, 607 *A.*2d 142.

On August 3, 1992, sixty-seven days after the Court rendered its decision in *Jacob*, Heher filed a complaint in the Chancery Division contending that the restrictive covenant and the financial disincentive aspects of the Agreement were unenforceable based on the Court's decision in *Jacob*. Heher alleged that he was entitled to the stated benefits provided in the Agreement, and because the restrictive covenant provision was void as a matter of public policy, its effect could not be subject to a binding non-appealable arbitration as required by Article IV of the Agreement.

In addition, Heher sought: (1) a permanent injunction preventing SSWH & B from arbitrating the issue of his entitlement to the stated benefit under the Agreement; (2) judgment in an amount equal to the stated benefit, together with prejudgment interest, attorneys fees and costs; (3) and an order requiring SSWH & B to provide an accounting of gross fees received by the firm to permit Heher to determine whether he was entitled to assert a claim for the supplemental benefit provided under the Agreement. *Heher I, supra,* 143 *N.J.* at 454–55, 672 *A.*2d 1147.

In lieu of an answer, SSWH & B filed a motion seeking to dismiss or, in the alternative, to stay the litigation and refer the matter to arbitration. The Chancery Division, however, concluded that the restrictive covenant and forfeiture provisions of the Agreement were void and, therefore, not arbitrable. The court also held that Heher's action was timely because it was filed within three months of the *Jacob* decision. The court further found that because the law firm conceded that Heher had accurately stated his earnings for the years 1982 through 1986 inclusive, the uncontested amount of the stated benefit due to Heher under the Agreement was $143,355. The court ordered arbitration of all other contested issues, including whether Heher was entitled to prejudgment interest and, if so, from what date, and whether Heher's stated benefit of $143,355 should be adjusted to account for loss of goodwill based on the Agreement.

Heher appealed and sought a stay of the arbitration pending that appeal. SSWH & B cross-appealed, challenging, among other things, the timeliness of Heher's action. The Chancery Division stayed arbitration pending disposition of the appeal. The Appellate Division reversed in an unpublished opinion. The court held that "[a]s to the Heher complaint and related issues we reverse the judgment denying the firm's motion to stay the Chancery Division litigation pending arbitration, and order the arbitration to proceed forthwith." Arguably, that holding did not alter the Chancery Division's determination that the claims for stated and supplemented benefits were not time-barred. The

Appellate Division also required the arbitrators to issue a written opinion setting forth findings of fact and legal conclusions to facilitate judicial review.

We granted Heher's petition for certification. In that appeal SSWH & B urged the Court to affirm the Appellate Division's judgment and require arbitration on all issues. SSWH & B did not mention the thirty-day notice defense in its brief filed with this Court. Heher, on the other hand, contended that the invalidity of the forfeiture provision in the Agreement was not arbitrable, that an offset for loss of goodwill was not appropriate under the Agreement, and that the amount of prejudgment interest due on the stated benefit was not disputed. He therefore asserted that he was entitled to the stated benefit of $143,355 because there was no material issue left to arbitrate. This Court affirmed the Appellate Division's judgment, *Heher I, supra,* 143 *N.J.* at 460–61, 672 *A.*2d 1147, but cautioned that *"the arbitrator's disposition will be subjected to an enhanced level of judicial review in order to afford relief from an arbitration award that obviously would frustrate a clear mandate of public policy."* *Id.* at 459, 672 *A.*2d 1147 (emphasis added).

When the matter proceeded to arbitration pursuant to our decision, SSWH & B challenged the timeliness of Heher's request for arbitration. The two-person majority of the arbitration panel concluded that Heher had not filed a timely claim as required by the Agreement, and that there were no extraordinary circumstances or countervailing equities that would relieve Heher of the obligation to file the requisite thirty-day notice required by Article V(3) of the Agreement. The majority decided that, in order to avoid a remand should the notice requirement be reversed on appeal,

> we could conclude that SSWH & B is entitled to pursue at a plenary hearing, after expedited and reasonable discovery, the loss of goodwill arising from nine of the firm's major clients[ ] leaving with Heher when he withdrew from the firm. In our view the firm should be entitled to attempt to establish the effect of any decrease in the value of its goodwill in assessing the amount of any "stated" or "supplemental" benefits to be paid to Heher.

One of the arbitrators disagreed and filed a dissenting opinion. The dissent concluded that "the key policy interest[s] that were vindicated in *Jacob* and *Weiss[ v. Carpenter, Bennett & Morrissey,* 143 *N.J.* 420, 672 *A.*2d 1132 (1996) ]* are the clients' freedom to choose their attorneys and the attorneys' freedom to leave their firms, and the decisions made to further those interests." The dissent also found that there were unique and extraordinary circumstances and equitable principles that would excuse the thirty-day notice requirement, and that, in any event, Heher had substantially complied with the thirty-day notice requirement. Finally, the dissent concluded that enforcing the thirty-day notice requirement in the present circumstances would be violative of the public policy declared by and protected in *Jacob* and *Weiss.*

Cross-motions were filed in the Chancery Division to confirm and to vacate the arbitrators' award. The Chancery Division granted the firm's motion and confirmed the award pursuant to *N.J.S.A.* 2A:24–7 by applying the following standard: "if the correctness of the award, including its resolution of the public policy question is reasonably debatable, judicial intervention is unwarranted." Under that standard, the court found that the arbitrators resolved the public policy question reasonably and fairly. In an unpublished opinion the Appellate Division affirmed. We granted Heher's petition for certification, 167 *N.J.* 635, 772 *A.*2d 937 (2001), and now reverse.

## II.

Heher argues that the arbitrators award should not have been confirmed because the thirty-day notice provision of the Agreement was invalid to the extent that it thwarted his attempt to vindicate the public policy interests embodied in *RPC* 5.6. He maintains that the arbitrator elevated the "sanctity of contracts" over that of the public policy considerations underlying *RPC* 5.6. Finally, he argues that SSWH & B should be barred from raising the thirty-day notice defense at this stage of the litigation.

Article V(3) of the Agreement provides: "Any partner [or] former partner ... who disputes an action taken by the firm shall

serve a written notice of intention to arbitrate upon the firm within thirty (30) days after the date on which the disputed action was taken." There is no question that arbitration is a preferred method of dispute resolution because, among other reasons, it "combines the advantages of privacy and efficiency." *Weiss, supra,* 143 *N.J.* at 440, 672 *A.*2d 1132. The critical issue raised in this appeal is whether the firm should now be precluded from raising the thirty-day notice defense after previously urging this Court to require the parties to submit to merits arbitration.

We note that in *Heher I,* SSWH & B, while vigorously asserting that arbitration remained an available and appropriate forum notwithstanding the public policy issues implicated by the restrictive covenant in its partnership Agreement, never informed this Court that if its arguments prevailed it nevertheless would seek to bar arbitration on the merits because of a failure to comply with the notice provision. Had the firm done so, the Court would have considered the issue of notice then and much of the subsequent litigation would have been unnecessary. In these circumstances, the firm should not be permitted to have "the benefits of a covenant that is against public policy and unenforceable." *Jacob, supra,* 128 *N.J.* at 35, 607 *A.*2d 142. To prevent that result, we hold that SSWH & B is estopped from relying on the notice provision after successfully persuading this Court that the parties should be required to arbitrate their dispute. Moreover, there is an inextricable connection between the notice provision and the restrictive covenant invalidated by *Jacob:* if not for the invalid covenant, no issue of notice would have arisen because Heher's right to his stated benefit would have been clear. We conclude, therefore, that Heher's claim for benefits filed within sixty-seven days of the *Jacob* decision is timely notwithstanding the notice provision in the Agreement.

### III.

Heher also contends that the firm is not entitled to pursue a claim for loss of goodwill based on the departure of nine of the

firm's major clients with Heher. The basis for the loss of goodwill claim is Article IV(8) of the Agreement. It provides:

> "The benefits provided in this Article IV represent payments for a former partner's interest in partnership goodwill, and as such are made for said partner's interest in partnership property under I.R.C. section 736(b)(2)(B) entitling said partner or the successor in interest of a deceased partner to capital gains treatment."

As noted previously, Article IV provides for two types of benefits: a stated benefit and a supplemental benefit. Nowhere in the Agreement is there a contractual basis for the firm to assert a claim against Heher's stated or supplemental benefit based on an alleged loss in firm goodwill. We now hold, as we suggested in *Heher I,* that Article IV(8) "relates only to the tax treatment of benefits received under the Agreement." *Heher I,* 143 *N.J.* at 455, 672 *A.*2d 1147. Therefore, that portion of the arbitrators' award requiring discovery and a plenary hearing in respect of the loss of goodwill is vacated.

Finally, Heher argues that he is entitled to the undisputed stated benefits of $143,355. He also seeks prejudgment interest pursuant to *Rule* 4:42–11(a). We agree that Heher is entitled to his stated benefit with prejudgment interest to be computed from August 3, 1992 when the complaint was filed.

We remand the matter to the Chancery Division to enter judgment for the stated benefit and prejudgment interest. The Chancery Division should then remand the matter to the arbitrators to determine, after appropriate discovery, the extent of any supplemental benefit due Heher under the Agreement. There is to be no set-off against any supplemental benefit based on alleged loss in firm goodwill.

## IV.

The judgment of the Appellate Division is reversed and the matter is remanded to the Chancery Division for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, LONG, LaVECCHIA, and ZAZZALI—5

*Opposed*—None.