OPINION
{¶ 1} Plaintiff-appellant City of Dayton (hereinafter "City) appeals the decision of the Montgomery County Court of Common Pleas overruling its motion to vacate an arbitrator's *Page 2 
award in a labor dispute with defendant-appellee International Association of Firefighters, Local No. 136 (hereinafter "Union"). The dispute involves the interpretation of a staffing provision in the Collective Bargaining Agreement (hereinafter "CBA") between the City and the Union.
 I {¶ 2} The instant matter arose on January 15, 2004, when the City submitted a revised work assignment policy, Fire Department Bulletin No. 4, to the Union. The new policy was to become effective on January 19, 2004. On January 20, 2004, the Union filed a grievance alleging a violation of Article 34 of the CBA. Additionally, the Union requested a temporary restraining order to enjoin the City from implementing Fire Department Bulletin No. 4 until its grievance could be adjudicated.
 {¶ 3} Pursuant to provisions contained in the CBA, the parties agreed to binding arbitration to settle the dispute. Arbitrator Hyman Cohen was chosen to preside over the multiple day arbitration hearing which occurred over the course of three days, April 8, 2004, June 30, 2004, and August 3, 2004. The arbitrator issued his decision and award finding in favor of the Union on June 21, 2005. Specifically, the arbitrator found that the City had violated Article 34 of the CBA when it adopted its plan to reduce staffing on fire engines below the four (4) person minimum required in the contract.
 {¶ 4} The City filed a motion to vacate the arbitrator's award on September 16, 2005, with the trial court. After hearing oral arguments from both parties on May 9, 2006, the trial court adopted the arbitrator's findings and overruled the City's motion to vacate in a decision issued on June 6, 2006. It is from this judgment that the City now appeals.
 II *Page 3 {¶ 5} Because the City's first and second assignments of error are interrelated, they will be discussed together:
 {¶ 6} "THE TRIAL COURT ERRED IN OVERRULING THE CITY'S MOTION TO VACATE ARBITRATION AWARD, BECAUSE THE ARBITRATOR WAS NOT ENTITLED TO GIVE NFPA GUIDELINE 1710 AND OSHA REGULATION 29 C.F.R. § 1910.134(IV)(4) `GREAT WEIGHT.'"
 {¶ 7} "THE TRIAL COURT ERRED IN DENYING THE CITY'S MOTION TO VACATE, BECAUSE THE ARBITRATOR ERRONEOUSLY CONCLUDED THE CITY HAD NOT MET ITS BURDEN IN ESTABLISHING BUDGET/FISCAL CONSTRAINTS AND LIMITS."
 {¶ 8} In the instant matter, the City contends that the trial court erred when it overruled the motion to vacate because the arbitrator's award is a misapplication of the terms agreed to by both parties in the CBA. The City argues that the award should be vacated because the arbitrator relied on standards outside the CBA to interpret the unambiguous language in Article 34 of the agreement.
 {¶ 9} Ohio public policy encourages the resolution of disputes through arbitration. Kelm v. Kelm (1993), 68 Ohio St.3d 26, 27, 623 N.E.2d 39.
 {¶ 10} Initially, it must be noted that, generally, arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator. Bowden v. Weickert (Feb. 3, 2006), Sandusky App. No. S-05-009, 2006-Ohio-471, citing Findlay City SchoolDist. Bd. Of Edn. v. Findlay Edn. Assn. (1990), 49 Ohio St.3d 129, 132,551 N.E.2d 186, reversed on other grounds. *Page 4 
 {¶ 11} The standard of review to be employed on appeal is whether the trial court erred as a matter of law in confirming the arbitration award. Bow den v. Weickert (Feb. 3, 2006), Sandusky App. No. S-05-009,2006-Ohio-471, citing Bd. Of Trustees v. Frat. Order of Police (2001),146 Ohio App.3d 456, 459, 766 N.E.2d 1027, 2001-Ohio-8674. Thus, our review in this case is narrowly confined "to an evaluation of the confirmation order of the common pleas court and we cannot review the substantive merits of the award absent evidence of material mistakes or extensive impropriety." Id., citing Brumm v. McDonald Co. Securities,Inc. (1992), 78 Ohio App.3d 96, 104. Accordingly, an arbitrator's award carries with it a strong presumption of validity. Association ofCleveland Firefighters, # 93 v. City of Cleveland (July 8, 2004), Cuyahoga App. No. 83726, 2004-Ohio-3608, citing Findlay City SchoolDist. Bd. Of Edn. v. Findlay Edn. Assn. (1990), 49 Ohio St.3d 129, 132,551 N.E.2d 186, reversed on other grounds.
 {¶ 12} The policy underlying the narrow standard of review and presumption of validity is best stated in Motor Wheel Corp. v. GoodyearTire Rubber Co. (1994), 98 Ohio App.3d 45, 52, 647 N.E.2d 844, as follows:
 {¶ 13} "The limited scope of judicial review of arbitration decisions comes from the fact that arbitration is a creature of contract. Contracting parties who agree to submit disputes to an arbitrator for final decision have chosen to bypass the normal litigation process. If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead merely become a system of `junior varsity trial courts' offering the losing party complete and rigorous de novo review. See National Wrecking Co. v.International Bhd. of Teamsters, Local 731 (C.A. 7, 1993),990 F.2d 957." *Page 5 
 {¶ 14} R.C. § 2711.10 sets forth narrow grounds upon which a court of common pleas may review an arbitration award. As noted by both parties, the relevant statutory provision is R.C. § 2711.10(D), which states that the court of common pleas shall vacate an award upon the application of any party to the arbitration if: "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Id.; Goodyear Tire Rubber Co. v. Local Union No. 200 (1975), 42 Ohio St.2d 516, 520,330 N.E.2d 703, certiorari denied (1975), 423 U.S. 986, 96 S.Ct. 393.
 {¶ 15} We begin our analysis by indulging in the presumption which favors the regularity and integrity of the arbitrator's acts in order to give effect to arbitration proceedings. Findlay City School Dist. Bd. OfEdn. v. Findlay Edn. Assn. (1990), 49 Ohio St.3d 129, 132,551 N.E.2d 186, reversed on other grounds. Findlay enunciated the applicable standard of review under R.C. § 2711.10(D) as follows:
 {¶ 16} "Therefore, given the presumed validity of an arbitrator's award, a reviewing court's inquiry into whether the arbitrator exceeded his authority, within the meaning of R.C. [ § ] 2711.10(D), is limited.Once it is determined that the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary, or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award pursuant to R.C. [ § ] 2711.10(D) is at an end." (Emphasis added.) Id ., 49 Ohio St.3d at 132-133, 551 N.E.2d at 189-190.
 {¶ 17} An arbitrator's award "draws its essence" from the collective bargaining agreement "when there is a rational nexus between the agreement and the award, and where the *Page 6 
award is not arbitrary, capricious, or unlawful." Id. Thus, an arbitrator's award may be vacated under R.C. § 2711.10(D) by the reviewing court only when the award does rationally flow from the terms of the collective bargaining agreement. Huber Hts. v. Fraternal Order ofPolice (1991), 73 Ohio App.3d 68, 74, 596 N.E.2d 571, 575, citingMahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn.Assn. (1986), 22 Ohio St.3d 80, 84, 488 N.E.2d 872, 875.
 {¶ 18} In its first assignment, the City contends that the arbitrator's decision does not draw its essence from the CB A because the arbitrator relied on standards outside the agreement to interpret the language in Article 34. Specifically, the City argues that the arbitrator exceeded his authority in the following ways by: 1) relying on "extraneous documents" and adding requirements to the CBA not agreed to by the parties; 2) issuing an award without rational support because it is inconsistently applied in other situations; and 3) applying his own brand of industrial justice mandating staffing levels in determining that the City's budgetary concerns cannot disrupt the four-person staffing requirement.
 {¶ 19} Article 34 of the CBA states in pertinent part:
 {¶ 20} "Management and the Union understand the financial vulnerability of the City's General Fund. Management and the Union agree on the desire of each to continue to provide a high level of service to the citizens of Dayton.
 {¶ 21} "In order to maintain operations in Fire Suppression, Management intends to staff in service engines and ladders with a minimum of one (1) Fire Officer and three (3) Firefighters. Both Management and Union realize that circumstances beyond either's control may necessitate readjustments to this staffing commitment. *Page 7 
 {¶ 22} "Management fully intends, where deemed appropriate and beneficial to the community and the Fire Department, to explore, test, and/or implement new, innovative and efficient technologies, equipment, response and deployment patterns, and service delivery programs in all areas of Fire Department operations.
 {¶ 23} "The total number of apparatus in-service at any given time is a Management right. Management will make every reasonable effort to communicate any changes of apparatus and/or staff assignment thereto."
 {¶ 24} Pursuant to Fire Department Bulletin No. 4, the City attempted to modify the staffing requirement in Article 34. The document provides that the staffing complement on certain fire engines and ladder companies would be reduced to three (3) person crews instead of four (4). The City argues that in light of the language in Article 34, it has the unilateral right to modify the staffing requirement as it deems necessary. The City portrays Fire Department Bulletin No. 4 as an attempt to address financial limitations and restraints based on the City's general fund. By lowering the number of firefighters on each fire engine that responds to an emergency, the City argues that it will reduce costs and expenses without affecting the safety of the firefighters.
 {¶ 25} Essentially, the City asserts that the arbitrator created additional staffing requirements with respect to Article 34 when he gave "great weight" to the National Fire Protection Association ("NFPA") guideline 1710, and the Occupational Safety and Health Administration ("OSHA") regulation, 29 C.F.R. § 1910.134(vi)(4), in determining that the City could not reduce the minimum number of firefighters on an engine to three (3) instead of four. NFPA guideline 1710 states that "[f]ire company staffing requirements shall be based on *Page 8 
minimum levels for emergency operations for safety, effectiveness, and efficiency." Guideline 1710 goes on to state that fire engine companies as well as ladder and truck companies "shall be staffed with a minimum of four on-duty personnel."
 {¶ 26} The City argues that the arbitrator adopted the above guideline and "mandated them to be binding upon the parties," thus unlawfully incorporating extraneous documents into his interpretation of the CBA. On this basis, the City asserts that we should overrule the trial court's decision and vacate the arbitrator's award. We disagree.
 {¶ 27} It is undisputed that the NFPA and OSHA guidelines are not binding upon the parties. However, it evident from the language in Article 34 of the CBA that the NFPA and OSHA guidelines form the basis for the four (4) person minimum staffing rule agreed to by both the City and the Union. The CBA was not created in a vacuum, and the arbitrator did not exceed his authority when he gave "great weight" to the staffing requirement suggested by the NFPA. Nowhere in the arbitrator's opinion did he find that the City was bound by the NFPA and OSHA guidelines. He did, however, find that "in [the] paramount interest of safety" the four person staffing rule suggested by the guidelines formed the basis of the staffing requirement in Article 34 of the CBA. Thus, it was not outside the province of the arbitrator's powers to find that a four person staffing minimum remain in place.
 {¶ 28} The City further argues that the use of the word "intends" in Article 34 demonstrates that four person staffing is not a requirement, rather it is merely a "commitment that may be altered by the City" at will. This argument, however, ignores important language in Article 34 that undermines the City's narrow interpretation. The last paragraph in Article 34 states that "the total number of apparatus in-service at any given time is a Management right. *Page 9 
Management will make every reasonable effort to communicate any changes of apparatus and/or staff assignment thereto." This is very strong language agreed to by both parties that clearly evidences the City's unbridled discretion to determine the number of fire engines in operation at any given time. Had the City desired the same discretion with respect to staffing minimums on the fire engines, it could have requested that similar language be inserted in the agreement, but it did not. In fact, evidence presented before the arbitrator suggests that a provision that mandated minimum staffing reductions in the event of a budgetary crisis by the City was deleted from the CBA because the Union would not ratify a document containing that language. Clearly, a rational nexus exists between the agreement and the arbitrator's award, and the arbitrator did not exceed the scope of his powers when he interpreted the CBA.
 {¶ 29} Lastly, the City argues that the arbitrator dispensed his own brand of industrial justice when he failed to consider the City's broad economic condition in drafting his decision. Specifically, the City contends that the arbitrator exceeded his authority when he determined that Dayton's financial and budgetary condition was not so grave as to justify a reduction of the four (4) person staffing protocol in certain situations. Thus, the City argues that the arbitrator impermissibly substituted his judgment in regards to the City's financial status. We disagree.
 {¶ 30} Article 34 states in pertinent part:
 {¶ 31} "In order to maintain operations in Fire Suppression, Management intends to staff in service engines and ladders with a minimum of one (1) Fire Officer and three (3) Firefighters. BothManagement and Union realize that circumstances beyond either's controlmay necessitate readjustments to this staffing commitment." (Emphasis added).
 {¶ 32} In support of its contention that the arbitrator cannot replace its judgment with *Page 10 
respect to budgetary issues, the City cites to Fraternal Order ofPolice, Ohio Labor Council, Inc. v. Perry County Commissioners (July 24, 2003), Perry App. No. 02-CA-14, 2003-Ohio-4038. In Perry, the Fifth District Court of Appeals affirmed a trial court's decision which vacated an arbitration award where plain language in the parties' collective bargaining agreement vested the sheriff s office with sole discretion to determine whether long term layoffs were necessary. The court there found that the arbitrator erred when he chose to review the county's finances based on his interpretation of the Ohio Revised Code. The arbitrator in Perry exceeded the scope of his authority when he used resources outside the clear and unambiguous terms in the agreement which vested power to institute layoffs solely in the sheriffs office.Perry is distinguishable from the instant case.
 {¶ 33} The language in Article 34 provides that "circumstances beyond either's control may necessitate readjustments to the staffing commitment." The arbitrator and the trial court correctly found this language to be ambiguous, which in turn required the City to present evidence that it was indeed in the midst of a financial crisis which necessitated a reduction of the minimum staffing requirement. The record reveals that the arbitrator received ample testimony and other evidence from both parties concerning the financial status of the City and the Union. It is logical that in evaluating whether financial circumstances existed which were "beyond either's control," the arbitrator would consider evidence from both parties in regard to the City's financial condition. After hearing said evidence, which included budget analyses from the City and alternative budget plans from the Union, the arbitrator concluded that the financial circumstances were not beyond the City's control and did not necessitate a reduction of the staffing minimum. Simply put, the arbitrator found, and the trial court agreed, that the City *Page 11 
did not meet its burden in demonstrating that budget constraints required the proposed staffing reduction. This decision was clearly within the purview of the arbitrator's authority as a matter of law, and we will not disturb his ruling on appeal.
 {¶ 34} The City's first and second assignments of error are overruled.
 III {¶ 35} Both of the City's assignments of error having been overruled, the judgment of the trial court is affirmed.
WOLFF, P.J. and FAIN, J., concur.
Copies mailed to:
Patrick J. Bonfield
Susan D. Jansen
 Hon. Gregory F. Singer *Page 1