[Cite as *Internatl. Assn. of Firefighters, Local 136 v. Dayton*, 2013-Ohio-2759.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 136 AND DAVID P. STRAWN | : | |
| | : | |
| Plaintiffs-Appellees | : | C.A. CASE NO.    25423 |
| v. | : | T.C. NO.    12CV2478 |
| THE CITY OF DAYTON | : | (Civil appeal from Common Pleas Court) |
| Defendant-Appellant | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___28th___ day of ___June___, 2013.

· · · · · · · · · ·

SUSAN D. JANSEN, Atty. Reg. No. 0039995, 111 W. First Street, Suite 1100, Dayton, Ohio 45402
         Attorney for Plaintiffs-Appellees

THOMAS M. GREEN, Atty. Reg. No. 0016361, 800 Performance Place, 109 N. Main Street, Dayton, Ohio 45402
         Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

        {¶ 1}   The City of Dayton appeals from a judgment of the Montgomery

County Court of Common Pleas, which denied the City's motion to vacate an arbitration award in favor of David Strawn and granted the motion of the International Association of Firefighters, Local 136, and Strawn to confirm the arbitration award. For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 2} After an evidentiary hearing, the arbitrator found the following facts:

{¶ 3} David Strawn was hired by the City of Dayton Fire Department as a paramedic. While employed as a paramedic, Strawn received two commendations, one in 1996 and another in 1998. Strawn became a full-time firefighter with the Dayton Fire Department in 1999.

{¶ 4} On March 14, 2008, Strawn fell while fighting a fire and sustained an injury to his right knee. Pursuant to department policy, he completed an injury investigation report and submitted it to his supervisor, Lt. Ty Grable, who recommended injury leave, if necessary. The acting fire chief at the time, Herbert Redden II, also recommended leave should it be needed in the future.

{¶ 5} Strawn did not miss work in the spring of 2008, but he continued to have problems with his right knee. On July 14, 2008, he did not report to work and called off because of problems with that knee. Strawn did not work between July 14 and September 12, 2008. The department requested, and he submitted, a medical certification form for his absence from work; he was not asked to complete and submit an injury investigation report. Strawn was considered to be on injury leave during this period. After Strawn returned to work on September 18, he did not miss any work for the remainder of that year.

**{¶ 6}** In January 2009, Strawn had surgery performed on his right knee. As a result, he missed six weeks of work. Upon his return to work, he provided a medical certification form; he was not asked to provide an injury investigation report. The City granted injury leave for the six-week period he did not work.

**{¶ 7}** Strawn was again unable to report to work due to his knee on July 30 and August 3, 2009. Strawn was seen by his treating physician on August 3, and he was released to return to work the following day. He reported for his next scheduled work day on August 6, 2009. Strawn again completed a medical certification form upon his return to work, and he was granted injury leave for the two days of work that he missed. Again, Strawn was not asked to complete an injury investigation report for these absences.

**{¶ 8}** After returning to work on August 6, 2009, Strawn regularly saw his treating physician for examination and treatment of his right knee. Strawn repeatedly received a series of Synvisc shots, including one on April 19, that helped lubricate his right knee.

**{¶ 9}** On April 23, 2010, Strawn woke at 5:30 a.m., intending to report to work. As he attempted to get out of bed, he had severe pain in his right knee. The pain was so severe that he was unable to put any weight on his right leg. Strawn concluded that he would be unable to perform his duties as a firefighter, and he called the dispatcher and reported that he would not be able to report to work. Strawn testified that he did not slip and fall, bump his knee, or otherwise do anything to cause the pain in his knee.

**{¶ 10}** On April 26, 2010, Strawn was seen by his treating physician and informed that he could return to work on April 27, without restrictions. Strawn missed two days of work, and returned to his normal schedule on April 29, 2010. Strawn submitted a medical certification form, as he had done in the past.

{¶ 11}  The City asked Strawn to complete an injury investigation report for the absences on April 23 and 26, 2010.  Strawn completed the form and submitted it, along with a copy of the injury investigation report for the March 2008 injury.  The submission of the March 2008 report "was in accordance with [the City's] practice and policy for showing that the previous claim for injury leave on April 23 and 26, 2010 was related to the March 14, 2008 injury."  (Arbitrator's Opinion and Award, p. 6.)

{¶ 12}  By letter dated May 27, 2010, Strawn was notified that his request for injury leave for April 23 and 26, 2010 was denied.  The reason for the denial was that his alleged re-injury on April 23 did not arise out of the scope and during the course of his employment.  Strawn's injury leave pay was converted to sick leave.  "Prior to the notification that [Strawn's] request for injury leave was denied, [Strawn] was not informed that his Medical Certification form lacked sufficient information, that more information was needed or that he did not establish a basis for granting injury leave.  According to the Grievant [Strawn] he went through the same process that he had in the past."

{¶ 13}  Strawn filed a timely grievance of the denial of his injury leave request.  In accordance with the collective bargaining agreement (CBA) between the City of Dayton and the International Association of Firefighters, Local 136 ("the Union"), the matter was first presented to the assistant chief of fire, who denied the grievance, stating, "Given that the knee pain occurred at home and while sleeping in bed his injury leave was denied for the cause did not occur in the course of and arising out of employment with the City of Dayton."  The grievance was then submitted to the director of fire services.  After a "second step hearing," the grievance was denied by the director.  The grievance then proceeded to binding arbitration with the Union

as Strawn's representative.   (See Article 21 of the Agreement.)

{¶ 14}   After a hearing, the arbitrator sustained Strawn's grievance, and ordered the City to grant him two days of injury leave for April 23 and 26, 2010, and to credit him for the two days of sick leave that he was required to use.   The arbitrator (and the parties) considered the principal issue to be whether the pain Strawn suffered on April 23, 2010 was the result of the injury incurred on March 14, 2008 while performing his duties as a firefighter for the City.   In a lengthy opinion, the arbitrator found that it was.   The arbitrator stated that "the history of Grievant's receiving injury leave and the continuing treatment of the Grievant for the knee injury clearly establishes a causal nexus."   The arbitrator concluded that the Union had established, by a preponderance of the evidence, that the City had violated the provisions of Article 12, Section 1 of the CBA by denying Strawn the right to use injury leave for his absence from work on April 23 and 26, 2010.

{¶ 15}   The arbitrator rejected the City's contention that injury leave was properly denied because Strawn's medical certification form failed to connect that April 2010 complaint to his March 2008 injury.   The arbitrator stated:

> Contrary to the Employer's claim that it has no obligation to take the initiative to prove or disprove the cause of an employee's claim, it is a party to the Collective Bargaining Agreement, and as a party it is jointly responsible for its administration in a fair and reasonable manner.   If the employer in its discretion needed additional medical information or the information received was incomplete, it should have requested such either directly from the treating physician or have the Grievant request such.   At the very least it should have told the Grievant that the

Medical Certification form did not contain sufficient information, or that it needed additional information. The Employer did not do this. However, the Employer did require the Grievant to produce the Injury Investigation Report (Joint Exhibit #4) which clearly tied his claim for injury pay on April 23 and 26, 2010 to the March 14, 2008 on the job injury. In the opinion of the Arbitrator, the Employer waived its right to complain about the inadequacy to the Grievant and/or to either request additional information or have the Grievant do so. Based on the testimony of the Deputy Director of Human Resources it certainly had the authority and the capacity to obtain additional medical information from the physician.

{¶ 16} The arbitrator considered the following evidence in reaching his conclusions: 1) the history of Strawn's injury; 2) the City's granting of injury leave on three previous occasions; 3) the circumstances under which the injury leaves were granted; 4) Strawn's continued medical treatment for the knee injury; 5) Strawn's compliance with the requirements for injury leave; 6) the City's failure to communicate any deficiency on the medical certification form to Strawn or request additional information; and, 7) the lack of any evidence that Strawn was a malingerer.

{¶ 17} On April 3, 2012, the City filed a motion to vacate the arbitrator's award in the court of common pleas. The City claimed that the arbitrator had "acted outside the scope of his authority by imposing an extra-contractual obligation on the City not contained in its collective bargaining agreement," specifically the duty to investigate whether an employee submitted sufficient information before denying injury leave. The City further claimed that the arbitrator exceeded his powers "in determining that the City was required to grant injury leave because all

conditions precedent were met under Article 12." The City argued that Article 12 gave the City discretion to grant or deny injury leave requests. The Union and Strawn opposed the City's motion and filed a cross-motion to confirm the arbitrator's award.

{¶ 18} The trial court denied the City's motion to vacate the arbitration award and granted the Union's and Strawn's motion to confirm the award. The trial court reasoned:

> Here, after reviewing the record, the Court concludes that the Arbitrator's decision and award was rationally related to the CBA. The Employer suggests that the Arbitrator imposed a "draconian" duty on it to seek more information when it was under no contractual or legal obligation to do so. However, the Arbitrator found that the Employer is a party to the CBA and as a party it is jointly responsible for its administration in a fair and reasonable manner. He further explained that the Employer waived its right to complain about the inadequacy of the Medical Certification by failing to communicate any perceived inadequacy to Strawn. Moreover, the Arbitrator found that although the CBA may contain discretionary language, it created a right to injury leave when all conditions precedent were met and the practice has been to grant the leave. The Arbitrator's interpretation that the CBA may contain discretionary language, but created a right to injury leave when all conditions precedent were met, is reasonable. This is buttressed by the seven reasons the Arbitrator relied on in coming to his decision and award.

> As such, the Arbitrator's decision and award is rationally related to the CBA and draws its essence from the CBA. The Arbitrator's decision is not

unlawful, arbitrary, or capricious. Thus, the Court must confirm the Arbitrator's award.

**{¶ 19}** The City appeals from the trial court's judgment

## II.

**{¶ 20}** The City's sole assignment of error states that "[t]he trial court erred in overruling the City's motion to vacate the arbitration award and sustaining the Union's motion to confirm the arbitration award."

**{¶ 21}** "Appellate review of an arbitration award is confined to an evaluation of the judicial order confirming, modifying, or vacating the award; we do not review the merits of the arbitrator's award." *Sicor Secs., Inc. v. Albert*, 2d Dist. Montgomery No. 22799, 2010-Ohio-217, citing, *e.g.*, *Warren Educ. Assn. v. Warren City Bd. of Educ.*, 18 Ohio St.3d 170, 174, 480 N.E.2d 456 (1985). Because arbitration is a creature of private contract, courts must ignore errors of fact or law by the arbitrator. *Piqua v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 185 Ohio App. 3d 496, 2009-Ohio-6591, 924 N.E. 2d 876, ¶ 18 (2d Dist.)

> Judicial review of arbitration awards is limited in order to encourage parties to resolve their disputes with arbitration. This has long been public policy in Ohio. The state and courts encourage arbitration because it "provides parties with a relatively speedy and inexpensive method of conflict resolution and has the additional advantage of unburdening crowded court dockets." Appellate courts must ensure that trial courts, the front line of arbitral review, do not exceed the scope of their review authority. Otherwise, "[a]rbitration, which is intended to avoid litigation, would instead merely become a system of 'junior varsity trial

courts' offering the losing party complete and rigorous de novo review." Thus, judicial review of an arbitrator's award is strictly limited, "and where a reviewing court exceeds the permissible scope of review such judgment will be reversed." (Internal citations omitted.) *FOP, Ohio Labor Council, Inc.* at ¶ 16. We review the trial court's order de novo. *Id.* at ¶ 15; *United Ohio Ins. Co. v. Central Mut. Ins. Co.*, 2d Dist. Darke No. 2010 CA 21, 2011-Ohio-2432, ¶ 15.

**{¶ 22}** "The grounds upon which a trial court may vacate an arbitrator's award are few and narrow." *FOP, Ohio Labor Council, Inc.* at ¶ 19, citing *Dayton v. Internatl. Assoc. of Firefighters,* 2d Dist. Montgomery No. 21681, 2007-Ohio-1337. R.C. 2711.10 identifies four grounds upon which a common pleas court may vacate an arbitration award: fraud, corruption, misconduct, and the arbitrator exceeded his or her powers. The City relies primarily upon R.C. 2711.10(D), which authorizes a common pleas court to vacate an arbitration award when "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

**{¶ 23}** The essential function of R.C. 2711.10(D) is "to ensure that the parties get what they bargained for by keeping the arbitrator within the bounds of the authority they gave him." *FOP, Ohio Labor Council, Inc.* at ¶ 21. As we stated in *Piqua v. Fraternal Order of Police, Ohio Labor Council, Inc.*,

> * * * The arbitration agreement generally explains how the arbitrator may resolve the parties' disputes, which often concern how their agreement, in which the arbitration provision is contained, should be understood. In this situation, "the function of the arbitrator is to determine and carry out the mutual intent of the

parties by interpreting the agreement and applying its provisions to the issues before him or her."

Like arbitral review generally, a trial court's inquiry into whether an arbitrator exceeded his powers under the parties' agreement is limited. Paragraph (D) is not violated if "the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious." Generally, if the arbitrator's award is based on the language and requirements of the agreement, the arbitrator has not exceeded his powers.

\* \* \*

An arbitrator's award draws its essence from an agreement when (1) the award does not conflict with the express terms of the agreement and (2) the award has rational support or can be rationally derived from the terms of the agreement.

(Citations omitted.) *Id.* at ¶ 21-22, ¶ 24.

**{¶ 24}** It is undisputed that the parties have entered into a collective bargaining agreement, which allows, as the third step of resolving a grievance, that the matter be submitted to binding arbitration. (Joint Exhibit 1.) The arbitrator's decision is "final and binding" on the parties. (Article 21, Section 4 of the CBA.) However, the arbitrator "shall have no power to add to or subtract from, change, modify, or amend any of the provisions" of the CBA. The parties agreed at the arbitration hearing that Strawn's grievance was properly before the arbitrator.

**{¶ 25}** The issue before the arbitrator was whether the City properly denied Strawn's request for injury leave on April 23 and 26, 2010. Article 12, Section 1 of the CBA, which

concerns the granting of injury leave, provides, in relevant part:

> Injury leave is leave of absence with pay for an employee to recover from a job connected occupational illness or injury received in the course of and arising out of his/her employment with Management. Leave is not deducted from sick leave credits.

> Injury leave may be granted provided the injury is reported to the immediate supervisor or designee within seventy-two (72) hours after the occurrence * * *.

{¶ 26} The City first claims that the documents submitted to the City by Strawn failed to medically link his April 2010 knee pain to his 2008 job-related injury and that the arbitrator impermissibly modified the CBA's language by granting injury leave to Strawn without a connection between the pain and a job-related injury. As stated above, the arbitrator found, based on the evidence, that the Union had established that Strawn's pain in April 2010 resulted from the job-connected injury incurred on March 14, 2008, while Strawn was performing his duties as a firefighter for the City. We cannot review the correctness of the arbitrator's factual finding.

{¶ 27} The trial court concluded that the Arbitrator's opinion and award was rationally related to the CBA and drew its essence from the CBA. Upon review of the record, we agree that the arbitrator did not modify the CBA. Rather, he found, based on the evidence, that Strawn's pain was due to a job-connected injury that was received in the course of and arose out of his employment with the City as a firefighter. The trial court correctly concluded that the arbitrator's opinion and award is not contrary to the terms of the CBA and is rationally derived

from the terms of that agreement.

{¶ 28} Second, the City contends that the arbitrator exceeded the scope of his authority by imposing a requirement on the City to seek additional information from employees or their physicians if the documentation in support of the injury leave request is deficient. As the City previously argued to the trial court, the City asserts on appeal that the arbitrator "imposed a draconian duty on the City to seek more information when it was under no contractual or legal obligation to do so."

{¶ 29} We do not read the arbitrator's opinion as creating an ongoing obligation that the City request supplemental information from an employee or the employee's physician in order to assist an employee in substantiating his or her claim for injury leave. Rather, the arbitrator noted, based on the evidence presented at the arbitration hearing, that if the City believed it needed additional information in this case to rebut Strawn's claims and evidence, it could have made an appropriate request for that information.

{¶ 30} As discussed by the arbitrator, the medical certification form submitted by Strawn on April 26, 2010 provided a diagnosis of Rt. Knee 716.56 or 716.86; Brent McKenzie, the acting director of human resources for the City, testified that he did not recall reviewing anything in the file that would explain that code. McKenzie had further testified that the City sometimes sends back the medical certification form to the employee or contacts the physician if the City needs additional information. The arbitrator found that the City had not requested additional information in this case, but only asked for an injury investigation report. The injury investigation report submitted by Strawn in May 2010 attached the March 2008 injury investigation report, thus relating his April 2010 pain with his original job-connected injury.

Strawn's direct supervisor recommended allowing injury leave. The arbitrator found that Strawn's claim for injury leave in April 2010 was not for a new injury, but for the continuing recovery from the injury of March 14, 2008. The arbitrator stated that the City was aware of this, and that "supervisory staff had personal knowledge of [Strawn's] injury and the difficulties he had from time to time with his recovery that required time off from work." The City had previously granted injury leave based on Strawn's submission of a medical certification form.

{¶ 31} Upon review of the administrative record, the arbitrator did not exceed his authority by finding that the City had the authority and capacity to obtain additional medical information and that, under the circumstances of this case, the City should have communicated any perceived inadequacy in the medical certification form to Strawn or his physician.

{¶ 32} Finally, the City claims that the trial court erred in confirming the award, because the arbitrator exceeded his powers in determining that the City was required to grant injury leave. The City asserts that Article 12 "unambiguously granted the City discretion in granting or denying injury leave requests." The arbitrator concluded that the CBA "may contain discretionary language, but it has created a right to injury leave when all conditions precedent are met and the practice has been to grant the leave." The trial court found that the arbitrator's interpretation of the CBA was reasonable, and we agree.

{¶ 33} Article 12 gives the City discretion to deny requests for injury leave, i.e., the City need not grant every request for injury leave. However, Article 12 specifically creates injury leave as a "leave of absence with pay for an employee to recover from a job connected * * * injury received in the course of and arising out of his/her employment with Management." The arbitrator had further noted that, as a party to the CBA, the City is responsible for the CBA's

administration in a fair and reasonable manner. The arbitrator thus reasonably concluded that Strawn was entitled to injury leave when he established that his April 2010 pain was a recurrence of his March 2008 injury, which was received in the course of and arising out of his employment with the City, and the City's practice has been to grant injury leave.

{¶ 34} The City's assignment of error is overruled.

III.

{¶ 35} The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, P.J. and WELBAUM, J., concur.

Copies mailed to:

Susan D. Jansen
Thomas M. Green
Hon. Michael W. Krumholtz