[Cite as *Fraternal Order of Police v. Dayton*, 2025-Ohio-2539.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| F[R]ATERNAL ORDER OF POLICE | : | |
| | : | C.A. No. 30382 |
| Appellee | : | |
| | : | Trial Court Case No. 2024 CV 02699 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| CITY OF DAYTON | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 18, 2025, the judgment of the trial court is reversed and remanded.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

[[Applied Signature]]
_____
MARY K. HUFFMAN, JUDGE

Epley, P.J., and Hanseman, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30382

THOMAS M. GREEN, Attorney for Appellant
STEPHEN R. KEENEY & SUSAN D. JANSEN, Attorneys for Appellee

HUFFMAN, J.

{¶ 1} Defendant-Appellant City of Dayton (the City) appeals from the trial court's judgment, which overruled the City's motion to vacate an arbitration award and granted a motion to confirm the arbitration award filed by Plaintiff-Appellee Fraternal Order of Police (the Union). The arbitrator had not found any violation of the collective bargaining agreement (CBA) itself but went outside of the CBA and considered a Police General Order in determining that a police officer was entitled to compensation for lost overtime hours that he did not work while on restricted duty. The General Order was not part of the CBA, but it provided that "full pay and benefits" were to be provided to an officer on administrative leave. However, the officer at issue had not been placed on administrative leave; instead, he had been assigned to restricted duty following an officer-involved shooting. Because the arbitrator exceeded his authority in looking outside of the CBA after finding no violation of the CBA, we reverse and remand this matter to the trial court to vacate the arbitration award.

## I. Background Facts and Procedural History

{¶ 2} Officer Cody Hartings was employed by the City as a police officer and was a member of the Union when he was involved in a shooting in August 2019. In May 2020, a lawsuit related to the shooting was filed by the decedent's mother; it was dismissed in November 2021.

{¶ 3} From August 2019 to February 2022, pending the outcome of an investigation and the lawsuit and following a brief period of administrative leave, Officer Hartings worked a series of restricted duty assignments by which he was constrained from working in any arrest or enforcement situation. He was placed on restricted duty because of the pending lawsuit and social media threats made against him. During this period of restricted duty, he was assigned a regular 40-hour work week and was eligible to work non-enforcement overtime, including contracted highway assignments and other activities at headquarters. During this time, however, overtime hours equal to those that Officer Hartings had typically worked while assigned to street duty were not available to him.

{¶ 4} The Union submitted a written request to the chief of police asking the department to pay Officer Hartings for overtime that he did not actually work but could have worked had he been assigned to regular enforcement duties; the Union's request was denied. The Union made a similar request to the City's human resources department, which was also denied.

{¶ 5} Pursuant to the CBA between the Union and the City, the Union filed a grievance on behalf of Officer Hartings, alleging that the City had violated the CBA by keeping him on restricted duty for too long and that he had suffered significant economic losses during his restricted-duty assignment; these losses included a shift differential for every hour worked, training officer premium pay, and overtime opportunities related to court time, SWAT team callouts, and other voluntary overtime opportunities. In September 2022, the matter proceeded to a hearing, and a decision denying the grievance was issued in October 2022. The Union appealed the denial of the grievance, and the matter proceeded to arbitration.

{¶ 6} In February 2024, the arbitration hearing occurred. Article 12 of the CBA

provided that "[a] grievance is a complaint that Management has violated this Agreement." The CBA also provided that "[t]he arbitrator shall have no power to add to, subtract from or change any of the provisions of this Agreement." The arbitrator considered whether an officer placed on restricted duty because of a pending lawsuit and community reaction following an officer-involved shooting is entitled to compensation for overtime the officer could have earned had he not been on restricted duty.

{¶ 7} The arbitrator weighed Articles 11 and 17 of the CBA related to discipline and overtime and Police General Order 3.03-5 (submitted by the City and not part of the CBA) pertaining to officers involved in a shooting. Article 11 provided the due process requirements for appealing any reprimand, suspension, demotion, or discharge without just cause. Article 17 defined overtime pay, stating that any employee working in excess of eight hours on his or her assigned shift was to be compensated with overtime pay at a rate of one and one-half the base rate for the excess time. General Order 3.03-5 provided that an officer may be placed on "administrative leave" with "full pay and benefits" when the officer's discharge of a firearm resulted in the injury or death of another person. Placing an officer on administrative leave was intended to give the command staff enough time to conduct an administrative review of the shooting incident and to ensure that no psychological trauma existed from the incident that would impair the officer's ability to exercise normal police duties. Once the officer returned to duty, the assistant chief was to determine whether community attitudes were likely to result in confrontations and, if so, whether the officer's assignment to another division (e.g., restricted duty) was necessary to minimize the officer's contact with the public.

{¶ 8} The arbitrator noted that Officer Hartings had not been placed on restricted duty as "discipline" under the CBA but rather had been put on such duty because of the pending

lawsuit and the potential community reaction. He opined that those concerns were beyond Officer Harting's control and were not proper subjects of discipline under Article 11. He found that there was no established "past practice" of compensating a police officer for overtime not worked. He also acknowledged that overtime pay, as defined in Article 17 of the CBA, applied to any employee "working in excess of eight (8) hours on his/her shift" and that Officer Hartings did not actually "work" the overtime for which he was seeking compensation. In so finding, the arbitrator concluded that the City had not violated the provisions of the CBA.

{¶ 9} However, the arbitrator ultimately found in favor of the Union, because under General Order 3.03-5, an officer, like Officer Hartings, was entitled to "full pay and benefits" when on administrative leave and that "full pay and benefits" included compensation for lost overtime opportunities. The arbitrator noted that General Order 3.03-5 was silent about an officer's pay when he transitioned from administrative leave to restricted duty and reasoned that, if the parties had intended to exclude overtime compensation from "full pay and benefits," the CBA would have used a word such as "regular" or would have specified an exclusion for overtime. As a result of this finding, the arbitrator directed the City to make Officer Hartings whole for his economic losses, which included the unspecified lost overtime hours that he had sustained during his assignment to restricted duty.

{¶ 10} The City appealed the arbitrator's decision to the trial court by filing a motion to vacate the arbitrator's award. The City argued that the arbitrator had acted outside of the scope of his authority, asserting that 1) there was nothing in the CBA authorizing compensation for lost overtime opportunities never worked, and 2) there was nothing in the General Order providing that "full pay and benefits" included compensation for overtime not worked. The City also emphasized that Officer Hartings had not been on administrative leave

(as described in the General Order) during the time at issue; instead, he had been on restricted duty, for which there was no compensation guideline in the General Order. The City contended that the plain language of the CBA required the City to pay officers who worked overtime and that there was no provision for paying officers who did *not* work overtime. Finally, the City argued that the award established an untenable precedent by requiring the City to use taxpayer funds to pay a police officer for overtime not worked if the officer was on restricted duty.

{¶ 11} The trial court overruled the City's motion to vacate and confirmed the arbitration award. In its decision, the trial court found that the CBA did not directly address the issue before the arbitrator and, thus, the arbitrator had been required to interpret the CBA and the General Order. According to the trial court, Article 4 of the CBA governing management rights provided that management could "develop, alter or abolish polices [sic], practices, procedures and rules to govern operation of the Police Department and bring about discipline" and "determine work assignments, and establish, alter or eliminate work schedules, locations or functions in accordance with municipal or departmental needs." The trial court reasoned that, pursuant to this Article, the police department had promulgated General Order 3:03-5, which the arbitrator had properly considered in his interpretation and analysis of the issue. The court concluded that it was the arbitrator's interpretation, not the court's, that governed the parties' rights. It also concluded that the arbitrator's award did not violate R.C. 2711.10(D), because it was not unlawful, arbitrary, or capricious, did not conflict with the CBA's express terms, and was rationally derived from the essence of the CBA itself. Finally, the trial court concluded that the arbitrator had not exceeded his authority given the rational nexus between the award and the CBA.

{¶ 12} The City appeals.

## II.    Assignment of Error

{¶ 13} In its sole assignment of error, the City contends that the trial court erred in overruling its motion to vacate the arbitration award because the arbitrator exceeded his powers. The City argues that the arbitrator found no basis under the CBA itself for the Union's grievance, as Officer Hartings's restricted duty assignment did not constitute "discipline" under the CBA, and there was no provision or sufficient "past practice" demonstrating that a police officer was entitled to be compensated with overtime pay for hours not actually worked while on restricted duty.

{¶ 14} The City asserts that the parties never agreed to arbitrate or interpret a General Order as part of the CBA and that the arbitrator lacked the authority to interpret General Order 3.03-5 as an obligation for the City to pay an officer for overtime not worked as part of "full pay and benefits," particularly when there was no definition of "full pay and benefits" in either the CBA or the General Order. The City points out that the plain language of Article 17 in the CBA requires the City to pay officers for working overtime, but there is no provision in the CBA or the General Order for paying officers who did not work overtime, particularly while on restricted duty. The City further contends that the trial court found that the CBA did not directly address the issue before the arbitrator, and thus, once the arbitrator found that there was no violation of the CBA itself, his work should have concluded. Under these circumstances, the City argues that there was no "rational nexus" between the CBA and the arbitration award, and the award did not "draw its essence" from the CBA. We agree.

{¶ 15} R.C. 2711.10 provides the grounds under which a trial court may vacate an arbitrator's award: fraud, corruption, misconduct, and the arbitrator exceeded his or her powers. The City relies upon R.C. 2711.10(D), which authorizes a common pleas court to

vacate an arbitration award when "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." The essential function of R.C. 2711.10(D) is "to ensure that the parties get what they bargained for by keeping the arbitrator within the bounds of the authority they gave him." *Internatl. Assn. of Firefighters, Loc. 136 v. Dayton*, 2013-Ohio-2759, ¶ 23 (2d Dist.), quoting *Piqua v. Fraternal Order of Police, Ohio Labor Council, Inc.,* 2009-Ohio-6591, ¶ 21 (2d Dist.).

{¶ 16} In reviewing an arbitrator's award, the trial court "must distinguish between an arbitrator's act in excess of his powers and an error merely in the way the arbitrator executed his powers. The former is grounds to vacate; the latter is not." *Piqua* at ¶ 18. An arbitrator's authority comes from the parties and is rooted in the arbitration agreement itself. *Id.* at ¶ 21. Because arbitration is a creature of private contract, courts must ignore errors of fact or law by the arbitrator. *Id.*at ¶ 18. "Generally, if the arbitrator's award is based on the language and requirements of the agreement, the arbitrator has not exceeded his powers." *Id*. at ¶ 23, citing *Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 81 Ohio St.3d 269, 273 (1998).

{¶ 17} Additionally, an arbitrator does not exceed his authority if the award "draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious." (Citations omitted.) *Id*. at ¶ 22. We have said that an arbitrator's award draws its essence from an agreement "when (1) the award does not conflict with the express terms of the agreement and (2) the award has rational support or can be rationally derived from the terms of the agreement." *Id*. at ¶ 24, citing *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emps. Assn., Local 11, AFSCME, AFL–CIO*, 59 Ohio St.3d 177 (1991), syllabus; *see also Montgomery Cty. Sheriff v. Fraternal Order of Police, Montgomery Cty. Lodge No.*

*104,* 2004-Ohio-4931, ¶ 22 (2d Dist.) ("Only when the arbitrator's award conflicts with the express terms of the agreement, or is without rational support, or cannot be rationally derived from the terms of the agreement can it be said to depart from the essence of the contract."). We have also said that, when an arbitration award is rationally supported or derived from an agreement, a rational nexus exists between them. *Id*. at ¶ 26, citing *Dayton v. Fraternal Order of Police,* 2006-Ohio-1129, ¶ 11 (2d Dist.), citing *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627,* 91 Ohio St.3d 108, 110.

{¶ 18} We limit the scope of our review of an arbitrator's award to the trial court's decision to confirm. *Id.* at ¶ 15, citing *Dayton v. Fraternal Order of Police*, 76 Ohio App.3d 591, 597 (2d Dist. 1991). "Appellate review of an arbitration award is confined to an evaluation of the judicial order confirming, modifying, or vacating the award; we do not review the merits of the arbitrator's award." *Internatl. Assn. of Firefighters at* ¶ 21, quoting *Sicor Secs., Inc. v. Albert,* 2010-Ohio-217 (2d Dist.), citing, *e.g., Warren Edn. Assn. v. Warren City Bd. of Edn.,* 18 Ohio St.3d 170, 174 (1985). We review the trial court's decision de novo. *See Dayton v. Internatl. Assn. of Firefighters, Local No. 136,* 2007-Ohio-1337, ¶ 11 (2d Dist.).

{¶ 19} The arbitrator focused on the interpretation of "full pay and benefits" as stated in the General Order. The arbitrator's basis for the award was his determination that "full pay and benefits" included pay for overtime hours not worked by an officer on restricted duty.

{¶ 20} The City contends that the arbitrator exceeded his authority when, in addition to the CBA, he considered the General Order, which was not a provision in the CBA, because there was no agreement between the parties to arbitrate or interpret the General Order. The City points out that CBA provided that "[t]he arbitrator shall have no power to add to, subtract from or change any of the provisions of this Agreement"; it argues that this

provision prevented the arbitrator from adding to the CBA's provisions in any way (including any consideration of the General Order).

{¶ 21} The arbitrator found grounds for ordering the City to pay Officer Hartings for overtime not worked by using the language in the General Order pertaining to "full pay and benefits" for officers on administrative leave following a shooting. The term "full pay and benefits" was not defined in either the CBA or the General Order, but the arbitrator decided that it was necessary to determine the definition in order to resolve the Union's grievance that Officer Hartings had not been properly paid for potential lost overtime due to his restricted duty assignment.

{¶ 22} However, Article 17 of the CBA defined overtime pay and the conditions under which it was to be paid, which occurred when any employee worked more than eight hours in a shift. There was no contention that Officer Hartings ever worked more than eight hours on any shift but was not paid for overtime. There was also no contention that the City violated Article 17 of the CBA. In the award, the arbitrator specifically noted that paying an officer for overtime hours not worked was not contemplated in the CBA or the City's General Orders:

> Neither the CBA nor General Order 3.03-5 explicitly addresses whether an officer placed on restricted duty because of a pending lawsuit and community reaction following an officer-involved shooting is entitled to compensation for the overtime the officer would have earned had s/he not been on restricted duty. This issue would be better addressed in bargaining than in arbitration.

Under these circumstances, we cannot say that there was a "rational nexus" between the CBA and the arbitration award. Where the arbitrator's award conflicts with the express terms of the CBA and is without rational support derived from the terms of the CBA, the award departs from the essence of the CBA and should be vacated.

{¶ 23} The trial court concluded that the arbitrator's opinion and award were rationally related and drew their essence from the CBA. However, upon our review of the record, we agree with the City that there was no provision in the CBA requiring the City to pay Officer Hartings for overtime that he did not work because he was on restricted duty. Neither the CBA nor the General Order explicitly addressed whether an officer placed on restricted duty was entitled to compensation for potential overtime hours lost. The arbitrator did not find that the City violated any terms of the CBA itself; therefore, he exceeded his authority when he modified the explicit terms of the CBA by deciding that the General Order provided the authority to pay Officer Hartings for overtime hours not worked. The CBA specifically provided the circumstances under which an employee was to be paid for overtime, and those circumstances were inapplicable to Hartings's situation. While the CBA acknowledged that the police department could promulgate policies to govern the department's operations, bring about discipline, or determine work assignments, it did not specifically state that the CBA was affected by the department's general orders or subject to the general orders. The CBA specifically provided the terms and conditions for overtime pay, and those conditions were not subject to alternative interpretations. When the arbitrator did not specifically find any ambiguity in the CBA, it was not proper to go outside of the CBA to determine an alternative outcome in this matter regarding an officer's right to overtime pay. The arbitrator's award was not based on the bargained language and requirements in the CBA related to overtime pay, and the award conflicted with the CBA's express terms. Under these circumstances, the trial court incorrectly concluded that the arbitrator's opinion and award were not contrary to the terms of the CBA and were rationally derived from the terms of that agreement. Thus, we find that the arbitrator exceeded his authority within the meaning of R.C. 2711.10(D) by finding that the City was required to pay Officer Hartings for overtime

hours not worked while he was assigned to restricted duty.    Therefore, the trial court erred in confirming the award. The City's sole assignment of error is sustained.

### III.    Conclusion

**{¶ 24}** The judgment of the trial court is reversed, and this matter is remanded to the trial court to enter an order vacating the award of the arbitrator.

. . . . . . . . . . . . .

EPLEY, P.J., and HANSEMAN, J., concur.